**Thomas E. HAYDEN and Jane S. Fonda, Plaintiffs,**

v.

**NATIONAL SECURITY AGENCY et al., Defendants.**

**Civ. A. Nos. 76–286, 76–287.**

United States District Court, District of Columbia.

April 27, 1978.

Martin S. Echter, Ira M. Lowe, Washington, D. C., for plaintiffs.

Paul F. Figley, Freedom of Information & Privacy Litigation Sec., U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

### I. *Introduction*

Plaintiffs bring this consolidated action [1] pursuant to the Freedom of Information Act (FOIA) 5 U.S.C. § 552 *et seq.*, seeking disclosure of all records pertaining to them in possession of the National Security Agency (NSA). Defendants have filed a Motion for Summary Judgment [2] alleging that the information is exempt from disclosure under 5 U.S.C. § 552(b)(1) and 5 U.S.C. § 552(b)(3). Plaintiffs have filed a Cross-Motion for Partial Summary Judgment and In Camera Review Subject to Protective Order.[3]

### II. *Background*

Following exhaustion of their administrative remedies, plaintiffs filed actions on February 20, 1976. A motion to consolidate was granted May 11, 1976.

Thereafter, plaintiffs filed a *Vaughn* [4] motion seeking a more detailed justification itemization and indexing of the documents sought to be withheld. Defendants responded with an affidavit from Norman Boardman, Information Officer of defendant NSA. Finding this affidavit insufficient under *Vaughn*, we granted plaintiffs' *Vaughn* motion on January 12, 1977.

Defendants then responded with their Motion for Summary Judgment and an alternative Motion for Leave to Submit Classified Affidavits for *in camera* examination. In support of the motions defendants submitted a second Boardman affidavit as well as an affidavit by Charles A. Briggs, Chief of the Information Service Staff of the Central Intelligence Agency (CIA).

Plaintiffs opposed both of defendants' motions and filed a Cross-Motion for Partial Summary Judgment and a Motion for *in camera* review of the documents with plaintiffs' counsel present.

On April 18, 1977, we granted defendants' Motion for Leave to Submit Classified Affidavits for *in camera* examination, whereupon defendants submitted a third Boardman affidavit *in camera*. It is twenty pages in length and is classified "Top Secret."

Neither this last "Top Secret" Boardman affidavit nor defendants' pleadings contend that any of the documents are exempt from disclosure because of the substantive information which they contain. Rather, it is defendants' contention that the documents at issue are exempt under 5 U.S.C. § 552(b)(1) and (b)(3) because disclosure would reveal the means by which the information was acquired, thereby revealing intelligence sources and methods, and the manner in which NSA functions.

We turn our attention to these contentions.

### III. *Exemption Under 5 U.S.C.* § 552(b)(1)

Exemption (b)(1) exempts from the disclosure obligations of the FOIA matters that are:

> (b)(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

Defendants assert that Executive Orders (EO) 10501 [5] and 11652 [6] specifically authorize them to withhold the requested documents and that such documents have been

---

1. C.A. 76–0286 and C.A. 76–0287.

2. Subsequent to the filing of its motion defendants have filed two Reply Memoranda.

3. Subsequent to the filing of its motion, plaintiffs have filed two Supplemental Memoranda.

4. *See Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 346–348, 484 F.2d 820, 826–828 (1973).

5. 3 CFR 1949–1953 Compilation (Nov. 4, 1953) at 979. The relevant portions of this EO largely parallel those of EO 11652.

6. 3 CFR 1971–1975 Compilations (March 8, 1972) at 678.

properly classified as either "Top Secret"[7] or "Secret"[8] pursuant to the Executive Orders. Plaintiffs urge that to determine if the documents meet the criteria established in EO 11652 and whether they have been properly classified, this Court should conduct an *in camera* inspection of the documents with counsel present.

## A. *In Camera Inspection*

The necessity for *in camera* inspection of documents was left to the discretion of the Court by *Weissman v. CIA,* 184 U.S.App. D.C. 117, 121, 565 F.2d 692, 696 (1977); and before the Court orders such inspection, "the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure." *Id.* 184 U.S.App.D.C. at 122, 565 F.2d at 697. "It is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an *in camera* examination to look for segregable non-exempt matter." *Id.,* 184 U.S.App.D.C. at 123, 565 F.2d at 698.

■ It was precisely because we found the record too vague and the agency claims too sweeping that we granted defendants' motion to submit a more detailed *in camera* affidavit. The twenty-page Boardman *in camera* affidavit which defendants most lately filed contains a summary of each document sought to be withheld, accompanied by a detailed explanation of intelligence sources, methods, or NSA *modus operandi* by which it was secured. The affi-

davit also lists the specific exemptions upon which defendants rely for each document. We view the contents of this affidavit to have remedied the vagueness and overbreadth of defendants' prior affidavits and, finding no suggestion of bad faith,[9] we conclude that an *in camera* submission of the documents themselves is unnecessary.

## B. *Agency Prerequisites for Asserting Exemption (b)(1)*

In *Weissman, supra* 565 F.2d at 697 (as amended by the Court's Order of April 4, 1977), the Court established a bifurcated analysis which must be undertaken with respect to exemptions claimed under § 552(b)(1):

> If exemption is claimed on the basis of national security the District Court must, of course, be satisfied that the proper procedures have been followed, and that by its sufficient description the contested document logically falls into the exemption indicated.

Accordingly, we move to consider whether the documents have been properly classified under EO 11652, and whether the affidavits submitted by defendants have established that the documents logically fall within the (b)(1) exemption.

### (i) *Document Classification*

■ On this score, defendants have submitted an affidavit indicating: (1) that each portion of each document is classified Secret or Top Secret pursuant to Executive

---

**7.** EO 11652 § 1(A) authorizes "Top Secret" classification to documents whose disclosure could reasonably be expected to cause "exceptionally grave damage to the national security" by *inter alia* compromising "cryptologic and communications intelligence systems" or by revealing "sensitive intelligence operations; and the disclosure of scientific or technological developments vital to national security."

**8.** EO 11652 § 1(B) authorizes "Secret" classification to documents whose disclosure could reasonably be expected to cause "serious damage to the national security" by *inter alia* disrupting "foreign relations significantly affecting the national security," by significantly im-

pairing "a program or policy directly related to the national security," or by revealing significant "intelligence operations."

**9.** Plaintiffs suggest that past abuses by defendants provides "evidence of possible bad faith." However, as plaintiffs amply demonstrate in their Memorandum in Opposition to Defendants' Motion for Summary Judgment . . . at 7–8, N.6 & 21–22 & N.13, these abuses have been fully investigated and exposed. We do not deem these recountings of past abuses as sufficient to support plaintiffs' allegations of defendants' *possible* bad faith in their processing of current FOIA requests.

Orders 10501 and 11652;[10] (2) that each document has been reviewed by a duly authorized classification officer[11] and; (3) that each document has the appropriate classification markings.[12] We deem this affidavit as satisfying defendants' burden of demonstrating that the appropriate procedural steps were taken in classifying the documents. *Klaus v. Blake*, 428 F.Supp. 37, 38 (D.D.C.1976).

#### (ii) *Document Content*

The defendants assert that the contents of the documents fall within the (b)(1) exemption which permits withholding of information which would compromise national defense or foreign policy of the United States. They place particular reliance on the Top Secret Boardman *in camera* affidavit. In evaluating this affidavit, we note that:

> the legislative history of the 1974 amendments [to the (b)(1) exemption] makes clear that . . . 'substantial weight' is to be accorded to detailed agency affidavits setting forth the basis for exemption.

> The conferees recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse effects might occur as a result of public disclosure of a particular classified record. Accordingly the conferees expect that the Federal courts, in making *de novo* determinations in section 552(b)(1) cases under the Freedom of Information Act, will accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record. S. Rep. 93–1200, 93d Cong., 2d Sess. 12 (1974). *Weissman, supra* at 697 n. 10 (as amended).

 ▮ It would logically follow from this directive to accord "substantial weight" to an agency determination as to the classification of documents that we should give no less weight to an agency's stated reasons for refusal to release the contents of those documents, particularly when those stated reasons represent the conclusions of those who daily deal with the securing and evaluation of foreign intelligence and whose training and experience and intuition are focused upon and directed to those functions. Reading the Top Secret Boardman *in camera* affidavit in that light, we are satisfied that the release of the material either "could reasonably be expected to cause exceptionally grave danger to the national security"[13] or "could reasonably be expected to cause serious damage to the national security"[14] by revealing intelligence sources or methods or by revealing functions and activities of the NSA. Accordingly we hold that 5 U.S.C. § 552(b)(1) exempts from disclosure the documents sought by the plaintiff in this action.

#### IV. *Exemption Under 5 U.S.C. § 552(b)(3)*

 ▮ As an alternative basis for withholding the requested documents, defendants assert that the documents are exempt under 5 U.S.C. § 552(b)(3). This exemption provides for nondisclosure of matters that are "specifically exempted from disclosure by statute." Defendants assert *inter alia* that Pub.L.No. 86–36, § 6, 73 Stat. 63 (50 U.S.C.A. § 402 note) (1959) is such an exemption 3 statute and that the documents sought by plaintiffs fall within its purview. That section reads as follows:

> Nothing in this Act or any other law (including but not limited to, the first section and section 2 of the Act of August 28, 1935 (5 U.S.C. § 654)) shall be construed to require *the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof, or of the names, titles, salaries or num-*

---

**10.** *See* Boardman affidavit filed with Defendants Motion for Summary Judgment at ¶ 3a.

**11.** *Id.* at ¶ 3a–6.

**12.** *Id.* at ¶ 3c.

**13.** EO 11652, § 1(A).

**14.** *Id.* at § 1(B).

bers of persons employed by such agency. (emphasis supplied).

Defendants contend that the release of the documents sought by plaintiffs would result in the disclosure of the organization, functions and activities of NSA. On the other hand, plaintiffs assert that Pub.L.No. 86–36 is not an exemption 3 statute and, alternatively, that if it is, it should be interpreted as having "the limited purpose of implementing any protection of intelligence sources or methods under exemption (b)(1) and Executive Order No. 11652." [15] The Courts have uniformly rejected plaintiffs' first assertion.[16] As to the alternative, it is true that one court has interpreted Pub. L.No. 86–36 to be limited in its scope.[17] But even if we were to accept this "limited scope" interpretation, we view the *in camera* Boardman affidavit as having established that withholding of the documents is necessary for the protection of intelligence sources, methods and activities. According-

ly, we would hold that the documents would be exempt from disclosure even under plaintiffs' "limited scope" interpretation of Pub.L.No. 86–36.

## V. *Conclusion*

In view of the foregoing, we grant defendants' Motion for Summary Judgment on the issue of the release of the documents themselves.

■ However, plaintiffs have also expressed an interest in the number of documents being withheld and the number of pages included in each document in that "it might suggest the scope of the NSA's interceptions of communications by, to or concerning a political dissident, an issue of vast public interest in a democracy . . . ." [18]

We fail to see how the revelation of this information could result in disclosing intelligence methods or sources of NSA functions and activities. Accordingly, defendants are

---

**15.** Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment at 26.

**16.** *Baez v. NSA*, C.A. 76–1921 (D.D.C., April 6, 1978) at 9; *Church of Scientology v. NSA*, C.A. 76–1494 (D.D.C., July 21, 1977) at 2; *Kruh v. GSA*, 421 F.Supp. 965 (E.D.N.Y.1976).

**17.** *Baez, supra* at 9–11. In *Baez*, the Court did not have, as we do, an *in camera* affidavit dealing with the activity of the NSA. In making its determination that Pub.L. 86–36 provides only a limited exemption, the Court found similarities between the language, purpose and history of that statute and those of 50 U.S.C. § 403g which was the subject of analysis in *Phillippi v. CIA*, 178 U.S.App.D.C. 243, 546 F.2d 1009 (1976). Section 403g provides, in relevant part that

. . . in order to further implement the proviso of section 403(d)(3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from . . . the provisions of any other law *which require the publication or disclosure of the organization, functions,* names, official titles, salaries or numbers *of personnel employed by the Agency.* (emphasis supplied)

The *Phillippi* Court held that §§ 403(d)(3) and 403g do not provide the CIA with complete exemption from disclosure of its records under the FOIA. The Court in *Baez* similarly held that Pub.L.No. 86–36 does not provide the NSA

with a blanket exemption. However *Baez* left unclear what it envisioned the scope of Pub. L.No. 86–36 to be. At one point it seems to suggest, that the statute only authorizes withholding of information which the NSA could "demonstrate . . . can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods . . . ." *Baez, supra* at 10. However the Court later speaks of NSA's "burden of showing that the documents withheld would, in fact, disclose the organization, function, activities or personnel structure of the agency." *Id.* at 11. We note in passing our view that the language of Pub. L.No. 86–36 supports this latter interpretation. Unlike § 403g which speaks in terms of exempting information which would reveal "the organization [and] functions . . . of personnel employed by the [CIA]," Pub.L.No. 86–36 exempts information which would reveal "the organization of *any* function of the NSA, *or any information with respect to the activities thereof* . . . ." (emphasis supplied). Accordingly, though Pub.L.No. 86–36 may not provide a blanket exemption for the NSA, the scope of the exemption it does provide would appear to be considerably broader than that provided the CIA under § 403g which the Court in *Phillippi, supra,* 178 U.S.App.D.C. at 249, 546 F.2d at 1015 n.14 described as including any "information about its internal structure."

**18.** Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment . . . at 12.

ORDERED within 20 days of the filing date of this Memorandum and Order, to disclose to plaintiffs the number of documents being retained relating to each of them and the number of pages included in each document.

In all other respects, plaintiffs' Cross-Motion for Partial Summary Judgment and *In Camera* Review Subject to Protective Order should be, and the same hereby is denied.[19]

It is so ORDERED this 27th day of April, 1978.

19. Our holding herein necessarily renders ineffective our previous grant of a *Vaughn* motion, *supra* at p. 249.