Thomas E. HAYDEN, Appellant,

v.

NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE et al.

Jane S. FONDA, Appellant,

v.

NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE et al.

Nos. 78–1728, 78–1729.

United States Court of Appeals, District of Columbia Circuit.

Argued 7 Sept. 1979.

Decided 29 Oct. 1979.

Martin S. Echter, Washington, D.C., with whom Ira M. Lowe, Washington, D.C., was on brief, for appellants.

Freddi Lipstein, Atty., Dept. of Justice, Washington, D.C., with whom Earl J. Silbert, U. S. Atty., Barbara Allen Babcock, Asst. Atty. Gen., Dept. of Justice, and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellees.

Daniel B. Silver, Washington, D.C., and Alfred C. Franklin also entered an appearance for appellee.

Before MacKINNON and WILKEY, Circuit Judges, and GORDON,* Senior United States District Judge for the Western District of Kentucky.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge: ˙

This case raises a recurring problem in the Freedom of Information Act (FOIA), concerning the balance struck by Congress between the disclosure of information by government agencies and the need for secrecy in some operations vital to the national defense. Appellants challenge a district court order which granted summary judgment to the National Security Agency (NSA) on grounds that documents requested by appellants under the FOIA were exempt from disclosure. We find that the requested documents fall within two exemptions of the Freedom of Information Act, and thus U.S. District Judge Corcoran properly refused to order disclosure.

## I. PROCEDURAL FACTS

Appellants Hayden and Fonda submitted FOIA requests to NSA for all materials

pertaining to them that were in NSA's possession. The Agency responded that it had located foreign intelligence reports referring to appellants, but it refused to disclose them because they were all classified in their entirety. After unsuccessfully appealing through the Agency, appellants each brought suit in United States District Court to compel disclosure. Their actions were consolidated at trial and on appeal.

The Agency filed an affidavit with the district court, explaining that the located materials had been obtained through NSA's monitoring of foreign electromagnetic signals, and that disclosure of information from the materials would jeopardize this intelligence collection mission. Deeming this affidavit insufficiently detailed to satisfy the standards of *Vaughn v. Rosen*,[1] the district court granted appellants' motion for detailed itemization, indexing, and justification of nondisclosure.

The Agency responded to the motion with a supplemental affidavit and with a request to file classified affidavits *in camera*, claiming that further justification would require the use of evidence which was itself classified and sensitive. Upon approval from the court, NSA submitted a twenty-page affidavit, classified "Top Secret." Appellants moved for partial summary judgment and for *in camera* review of the withheld documents with participation of their counsel under protective order. The Agency moved for summary judgment on the basis of its affidavits.

The district court granted judgment for NSA on the issue of release of the documents, without viewing them *in camera*. Relying on the twenty-page *in camera* affidavit, the court found the requested documents to be within FOIA Exemptions 1 and 3. The court did, however, order the Agency to disclose the number of documents and pages being withheld; from this order the Agency has not appealed. Appellants have

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

now appealed the grant of summary judgment to NSA.[2]

## II. STANDARDS AND THEIR APPLICATION

■ In previous cases involving FOIA requests for classified documents this court has considered what procedures are appropriate for a trial court to use, in order to determine whether documents should be released. Despite some variation in emphasis on disclosure versus secrecy, these decisions have agreed upon certain guidelines for the exercise of judicial discretion concerning such FOIA requests. Though each will be discussed in greater detail, these standards are in summary as follows. (1) The trial court must make a de novo review of the agency's classification decision, with the burden on the agency to justify nondisclosure.[3] (2) In conducting this review, the court is to give "substantial weight" to affidavits from the agency.[4] (3) The court is to require the agency to create as full a public record as possible, concerning the nature of the documents and the justification for nondisclosure.[5] (4) If step (3) does not create a sufficient basis for making a decision, the court may accept classified affidavits in camera,[6] or it may inspect the documents in camera. This step is at the court's discretion, with certain guidelines discussed below.[7] (5) The court should require release of reasonably segregable parts

of documents that do not fall within FOIA exemptions.[8]

In the present case, Judge Corcoran demonstrated an understanding of these procedural standards and complied with them. We find no respect in which the court abused its discretion or made any error of law. The case does present some questions to which the answer is not perfectly obvious, however, and we will examine them in detail. These points concern facts and issues peculiar to this case, which have not been directly faced in our prior decisions, and issues on which the guidance of the earlier decisions is perhaps not entirely clear.

### A. Sufficiency of Public Record

The limited nature of the public record in this case raises a question of its sufficiency under Vaughn v. Rosen. It is true that the public NSA affidavits do not include the itemization of documents and detailed justification of nondisclosure usually required under Vaughn. When the itemization and justification are themselves sensitive, however, to place them on public record could damage security in precisely the way that FOIA Exemption 1 is intended to prevent. Vaughn anticipated this problem by observing that the agency's analysis on the public record ordinarily "would not have to contain factual descriptions that if made public

---

2. See Hayden v. National Security Agency, 452 F.Supp. 247 (D.D.C.1978).

3. Ray v. Turner, 190 U.S.App.D.C. 290, 294–97, 587 F.2d 1187, 1191–94 (D.C.Cir.1978); Vaughn v. Rosen, 157 U.S.App.D.C. 340, 343, 484 F.2d 820, 823 (D.C.Cir.1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). This is a clear statutory requirement. 5 U.S.C. § 552(a)(4)(B) (1976).

4. Ray v. Turner, 190 U.S.App.D.C. at 296–97, 587 F.2d at 1193–94; Weissman v. Central Intelligence Agency, 184 U.S.App.D.C. 117, 122 n. 10, 565 F.2d 692, 697 n. 10 (D.C.Cir.1977); see S.Rep. No. 1200, 93d Cong., 2d Sess. 12 (1974) (Conference Comm. report), reprinted in Senate Comm. on the Judiciary and House Comm. on Government Operations, Freedom of Information Act and Amendments of 1974 (P.L. 93–

502): Source Book 229 (Comm. Print 1975) [hereinafter cited as Source Book].

5. Phillippi v. Central Intelligence Agency, 178 U.S.App.D.C. 243, 247, 546 F.2d 1009, 1013 (D.C.Cir.1976); see Vaughn v. Rosen, 157 U.S. App.D.C. at 346–48, 484 F.2d at 826–28.

6. See Phillippi v. Central Intelligence Agency, 178 U.S.App.D.C. at 247, 546 F.2d at 1013.

7. See Ray v. Turner, 190 U.S.App.D.C. at 298, 587 F.2d at 1195; Weissman v. Central Intelligence Agency, 184 U.S.App.D.C. at 121–23, 565 F.2d at 696–98.

8. Ray v. Turner, 190 U.S.App.D.C. at 300, 587 F.2d at 1197; Vaughn v. Rosen, 157 U.S.App. D.C. at 347 n. 22, 484 F.2d at 827 n. 22.

would compromise the secret nature of the information . . . ." [9]

The facts of this case present a situation where the district court could reasonably find that public itemization and detailed justification would compromise legitimate secrecy interests, thus making it appropriate to receive affidavits *in camera* rather than in public. The unique signals intelligence mission of NSA, succinctly described in its first public affidavit, explains why secrecy concerns are greater here than is usual in FOIA cases. In most other types of cases, a public *Vaughn* itemization does not compromise secrecy, because the contents of the requested documents are not thereby disclosed, and it is only the *substantive content* which is allegedly exempt from disclosure. But with respect to NSA's signals intelligence operations, the sensitive material comprises *more* than just the substantive content of messages. Harm could follow from the disclosure of any material that might help to identify the communications intercepted by NSA, such as information about date, time, origin, or manner of transmission or receipt. Such information would be helpful for determining which channels or types of communication are being monitored by NSA. Indeed, NSA does not allege that the *substance* of the communications is sensitive, except insofar as it helps identify which communications have been of interest to NSA.

In this light, we find that the district court created "as complete a public record as is possible," [10] within the limits of possibility imposed by NSA's peculiar circumstances. We recognize that a fuller public record could enhance the adversary process; [11] but it could also reveal sensitive information. This would violate Exemption 1, for its basic purpose is to ensure that the FOIA will *not* require disclosure of any such sensitive material unless judicial scrutiny finds it warranted. The proper procedure for a district court, then, is to accept sensitive affidavits *in camera*, as was done here.[12] If the material in the affidavit then appears nonsensitive, the court can order it released, as we discuss below. In a limited range of security cases, it is simply not possible to provide for orderly and responsible decisionmaking about what is to be disclosed, without some sacrifice to the pure adversary process. By providing for *in camera* review,[13] Congress has acknowledged that judges must sometimes make these decisions without full benefit of adversary comment on a complete public record. The present case is one example where some of the interests of the adversary process are outweighed by the nation's legitimate interests in secrecy and orderly process for disclosure. Especially concerning the NSA signals intelligence mission, a court cannot demand as complete a public record as in many other contexts—even other intelligence contexts [14]—without imperiling legitimate secrecy interests.

B. *Presence of Requester's Counsel at* in Camera *Review*

Appellants suggest, as a way to enhance the adversary process within an *in camera* proceeding, that their counsel should have been admitted to the *in camera* review subject to a protective order. To the best of our knowledge, this privilege has never been afforded a private attorney in a national security case; on the contrary, this court has accepted the idea of *in camera* review of affidavits and documents without the presence of requester's coun-

9. *Vaughn v. Rosen*, 157 U.S.App.D.C. at 346, 484 F.2d at 826.

10. *Phillippi v. Central Intelligence Agency*, 178 U.S.App.D.C. at 247, 546 F.2d at 1013.

11. *See Vaughn v. Rosen*, 157 U.S.App.D.C. at 344–45, 484 F.2d at 824–25.

12. *See Phillippi v. Central Intelligence Agency*, 178 U.S.App.D.C. at 247, 547 F.2d at 1013; S.Rep. No. 854, 93d Cong., 2d Sess. 15–16

(1974), U.S.Code Cong. & Admin.News 1974, p. 6267, *reprinted in* Source Book, *supra* note 4, at 167–68.

13. 5 U.S.C. § 552(a)(4)(B) (1976).

14. *Cf. Ray v. Turner*, 197 U.S.App.D.C. at 292 & n. 1, 587 F.2d at 1189 & n. 1 (CIA provided public identification of requested documents).

sel.[15] The nearest authority for the suggested procedure is language in a Senate Report encouraging it where possible in FOIA cases, and a case in this court employing it in a somewhat different context; both are cited in a recent concurring opinion in this court.[16] The Senate Report mentions approvingly a situation where an attorney was allowed access to Treasury Department files, apparently not related to national defense, under a protective agreement.[17] The case in this court allowed access to *in camera* material for counsel to a congressional committee, expressly noting that the information was sought for legislative purposes and that counsel may be subject to security clearance.[18] We agree that a court has inherent discretionary power to allow such access where appropriate; but it is not appropriate, and not possible without grave risk, to allow access to classified defense-related material to counsel who lack security clearance, unless a court has already determined pursuant to FOIA procedures that the material should be publicly disclosed. This court has recognized this distinction, by permitting limited access for counsel in executive privilege cases where there is no risk of damage to national security,[19] but expressly denying access when security is at stake.[20] The district court in this case, therefore, did not abuse its discretion by excluding counsel from *in camera* review of the classified affidavit.

## C. Adequacy of Grounds for Upholding Agency's Classification Decision Under Exemption 1

We turn next to the question, whether the *in camera* affidavit and the public affidavits provided a sufficient basis for the district court, without examining the documents, to uphold the Agency's classification decision. We must first examine the standard set by Congress, and interpreted by the courts, for review of an agency's classification decision. Courts are to conduct a *de novo* review of the agency's classification decision, with the burden on the agency to show proper classification.[21] Exemptions to the FOIA are to be construed narrowly.[22] The narrow exemption in issue here applies to matters which are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order. . . ."[23]

If an agency demonstrates that requested materials fall within this category, then it has met its burden and Exemption 1 applies. The agency may meet its burden by submitting affidavits and other evidence to the court to show that the documents are properly classified and thus clearly exempt from disclosure; the court is to afford this opportunity to the agency before ordering any *in camera* inspection of documents.[24]

**15.** *Phillippi v. Central Intelligence Agency*, 178 U.S.App.D.C. at 245, 247, 546 F.2d at 1011, 1013; *Vaughn v. Rosen*, 157 U.S.App.D.C. at 345, 484 F.2d at 825.

**16.** *Ray v. Turner*, 190 U.S.App.D.C. at 315 & n. 50, 587 F.2d at 1212 & n. 50 (Wright, C. J., concurring).

**17.** S.Rep. No. 854, *supra*, note 12, at 14–15, *reprinted in* Source Book, *supra* note 4, at 166–67.

**18.** *United States v. American Telephone & Telegraph Co.*, 185 U.S.App.D.C. 254, 266–67, 567 F.2d 121, 133–34 (D.C.Cir.1977) (supplemental opinion).

**19.** *Black v. Sheraton Corp.*, 184 U.S.App.D.C. 46, 60, 564 F.2d 531, 545 (D.C.Cir.1977); *Dellums v. Powell*, 182 U.S.App.D.C. 244, 246, 561 F.2d 242, 244 (D.C.Cir.), *cert. denied*, 434 U.S. 880, 98 S.Ct. 234, 54 L.Ed.2d 160 (1977). *See*

*also United States v. Nixon*, 418 U.S. 683, 715 n. 21, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

**20.** *Halkin v. Helms*, 194 U.S.App.D.C. 82, 88, 598 F.2d 1, 7 (D.C.Cir.1978).

**21.** 5 U.S.C. § 552(a)(3) (1976).

**22.** *Phillippi v. Central Intelligence Agency*, 178 U.S.App.D.C. at 245 n. 4, 546 F.2d at 1011 n. 2; *Vaughn v. Rosen*, 157 U.S.App.D.C. at 343, 484 F.2d at 823.

**23.** 5 U.S.C. § 552(b)(1) (1976).

**24.** *Weissman v. Central Intelligence Agency*, 184 U.S.App.D.C. at 122, 565 F.2d at 697; *Vaughn v. Rosen*, 157 U.S.App.D.C. at 344–45, 484 F.2d at 824–25; S.Rep. No. 1200, *supra* note 4, at 11, *reprinted in* Source Book, *supra* note 4, at 226.

In these affidavits, the agency has the burden under the statutory language to show (1) that it followed proper classification procedures, and (2) that by its description, the document logically falls within the claimed exemption.[25]

When the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate.[26] The central issue is the standard for determining when affidavits suffice as a basis of decision without *in camera* review of the documents. As this court has expressed this standard, the affidavits must show, with reasonable specificity, why the documents fall within the exemption.[27] The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.[28] If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.[29] The sufficiency of the affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith,[30] nor by past agency misconduct in other unrelated cases. Unless the affidavits are deficient in one of the above ways, the court need inquire no further into their veracity.[31] This is in accordance with congressional intent that courts give agency affidavits "substantial weight," in recognition of the agency's expertise.[32] In this scheme, *in camera* review is a "last resort"[33] to be used only when the affidavits are insufficient for a responsible *de novo* decision.

There is a further issue of what degree of certainty the reviewing court must have, before it finds the documents to be within the exemption category. The standard for proper classification is set forth in Executive Orders 10501 and 11652. Executive Order 11652 states that documents are to be classified "Top Secret" if release of the material "could reasonably be expected to cause exceptionally grave damage to the national security," for example, by compromising "communications intelligence systems" (exactly what is involved here); and to be classified "Secret" if disclosure "could reasonably be expected to cause serious damage to the national security."[34] The standard for *de novo* review, then, even when no presumption of validity is given to the agency, must still be one of reasonable basis for finding potential harm from disclosure.

In the present case, the district court applied the precise standard of Executive Orders 10501 and 11652 and concluded that the classification procedures were proper, and that there were reasonable grounds for expecting the requisite potential harm from disclosure.[35] The Agency's public affidavits

---

25. *Weissman v. Central Intelligence Agency*, 184 U.S.App.D.C. at 122, 565 F.2d at 697.

26. *Id.* 184 U.S.App.D.C. at 121–22, 565 F.2d at 696–97.

27. *Ray v. Turner*, 190 U.S.App.D.C. at 298, 587 F.2d at 1195.

28. *See Founding Church of Scientology v. National Security Agency*, 197 U.S.App.D.C. —— at ——, 610 F.2d 824 at 836 (D.C.Cir. 1979); *Goland v. Central Intelligence Agency*, 197 U.S.App.D.C. —— at ——, 607 F.2d 339 at 351 (D.C. Cir.1978); *Weissman v. Central Intelligence Agency*, 184 U.S.App.D.C. at 122–23, 565 F.2d at 697–98.

29. *See, e. g., Weissman v. Central Intelligence Agency*, 184 U.S.App.D.C. at 122–23, 565 F.2d at 697–98.

30. *Ray v. Turner*, 190 U.S.App.D.C. at 298, 587 F.2d at 1195.

31. *See id.*

32. S.Rep. No. 1200, *supra* note 4, at 12, *reprinted in* Source Book, *supra* note 4, at 229.

33. *Weissman v. Central Intelligence Agency*, 184 U.S.App.D.C. at 122, 565 F.2d at 697.

34. Exec. O. 11652, 3 C.F.R. ch. II (1971–1975 compilation); *see* Exec. O. 10501, 3 C.F.R. ch. II (1949–1953 compilation).

35. *Hayden v. National Security Agency*, 452 F.Supp. at 251.

described the activity involved, the need for maintaining secrecy, and the reason for believing that disclosure of any of the requested material could compromise legitimate secrecy needs. The affidavit submitted for *in camera* review spells out these factors with greater specificity. When substantial weight is given these affidavits, under the standards we have described, summary judgment for the Agency is appropriate, without *in camera* review of the documents, unless there is a defect as described above.

Appellants attempt to show such a defect by arguing that the Agency's rationale for nondisclosure is inherently implausible.[36] They argue that some channels monitored by NSA are well known to be closely watched, and that no foreign government would send sensitive material over them; hence NSA can safely disclose material gained from those channels. This argument overlooks, first, those situations where sending sensitive material over clear, rather than encrypted channels, is the most effective means, because it is quick and simple; and, second, those situations where sensitive material might go out inadvertently over a clear channel. The Agency states that to reveal which channels it monitors would impair its mission; this is by no means an illogical or implausible assertion; indeed, it appears inherently logical that this assertion is true, although as a court we are not called upon to make such final determination. This is precisely the sort of situation where Congress intended reviewing courts to respect the expertise of an agency;[37] for us to insist that the Agency's rationale here is implausible would be to overstep the proper limits of the judicial role in FOIA review.

36. *See, e. g.,* Reply Brief for Appellants at 6–10.

37. *See* S.Rep. No. 1200, *supra* note 4, at 12, *reprinted in* Source Book, *supra* note 4, at 229.

38. *See Ray v. Turner,* 190 U.S.App.D.C. at 299–300, 587 F.2d at 1196–97; *Vaughn v. Rosen,* 157 U.S.App.D.C. at 347–48, 484 F.2d at 827–28.

### D. *Segregability of Requested Materials*

 This court has held that when materials exempt under the FOIA contain reasonably segregable parts that are not exempt, those parts should be disclosed;[38] the same policy applies to segregable, nonsensitive portions of a classified affidavit. We must decide whether the district court in this case erred by not ordering any portions of the documents or classified affidavit to be disclosed. Concerning the documents, NSA contended that both Exemption 1 and Exemption 3 covered each in its entirety. We find the district court's acceptance of this contention to be reasonable. The Agency's rationale for nondisclosure (of agency activities, methods, sources) applied to any and all information from the requested documents; this was not a case of exempting whole documents on a claim that they contained some exempt material. Hence there was no need for the district court to inspect the documents *in camera* for severable portions.[39]

Concerning the classified NSA affidavit, it is true that in a similar FOIA case against NSA, another district court has released some paragraphs from a similar NSA affidavit.[40] We do not express an opinion on that court's exercise of discretion, but we find in the present case that the district court had reasonable grounds for its action. After reading the classified affidavit, we find, under the statutory standard, that it was reasonable, in the interests of national security, to conclude that the information was sensitive and properly classified. The selection of the portions furnished plaintiffs' counsel and those retained in Top Secret status was entirely justified; indeed, the preservation of secrecy in regard to those matters not disclosed appears to us to be imperative in the interests of national security. The court's use of its discretion is

39. *See Weissman v. Central Intelligence Agency,* 184 U.S.App.D.C. at 123, 565 F.2d at 698.

40. *Baez v. National Security Agency,* No. 76–1921 (D.D.C. 2 Nov. 1978).

further supported by the congressional determination, reflected in Public Law No. 86–36,[41] that disclosure of NSA's activities is not to be required by law due to the potential harm to security.

Those parts which repeated the Agency's public description of its signals intelligence mission may perhaps not have been sensitive; but to release them would have merely duplicated material already in the public record. Shortly before appellate argument in this case, the government released to appellant's counsel several paragraphs of the classified affidavit. These paragraphs substantially duplicated those which were released in the other FOIA case against NSA, after the time of the district court decision in the present case. It was reasonable for the government to release these paragraphs after their substance had been publicly compromised, even though the district court had earlier found them properly classified.

### III. EXEMPTION 3

■ As an alternative ground, the district court rested on FOIA Exemption 3.[42] That provision of the FOIA exempts from disclosure those matters which are

specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld . . . . .

The district court found Public Law No. 86–36 to be such an exempting statute.[43] Section 6(a) of that law states:

Except as provided in subsection (b) of this section, nothing in this Act or any other law (including, but not limited to, the . . . [Classification Act of 1949]) shall be construed to require the disclosure of the organization or *any function* of the National Security Agency, of *any information with respect to the activities thereof,* or of the names, titles, salaries, or number of the persons employed by such agency.[44]

Public Law No. 86–36 clearly refers to particular types of matters to be withheld, as required by Exemption 3, and this court has already held it to be an Exemption 3 statute in *Founding Church of Scientology v. National Security Agency.*[45] In that case we left open one question which is important here: the proper scope to be given the exemption under Public Law No. 86–36.[46] On this issue we find the plain wording of the statute conclusive in the present case. The public record in this case, even without the *in camera* affidavit, demonstrates that release of the documents would disclose a function of the NSA, since signals intelligence is one of the Agency's primary functions; and would disclose information with respect to Agency activities, since any information about an intercepted communication concerns an NSA activity. Certainly where the function or activity is authorized by statute and not otherwise unlawful, NSA materials integrally related to that function or activity fall within Public Law No. 86–36 and Exemption 3.

Appellants argue that Public Law No. 86–36 should be applied for Exemption 3 purposes in the same manner as similar

---

**41.** Discussed in Part III below.

**42.** 5 U.S.C. § 552(b)(3) (1976).

**43.** *Hayden v. National Security Agency,* 452 F.Supp. at 252.

**44.** Pub.L. No. 86–36, 73 Stat. 63 (1959) (codified at 50 U.S.C. § 402 (1976)) (emphasis added). The Classification Act of 1949, 5 U.S.C. § 654 (1958), was repealed by Pub.L. No. 86–626, 74 Stat. 472 (1960). As exempting statutes NSA also points to 50 U.S.C. § 403(d)(3)

and 18 U.S.C. § 798. The district court rested only on Pub.L. No. 86–36, which grants the broadest exemption of the three statutes; therefore it is the only exempting statute which we will consider here.

**45.** 197 U.S.App.D.C. ——, 610 F.2d 824 (D.C. Cir. 1979).

**46.** *Id.,* at —— n. 46 of 197 U.S.App.D.C. at 829 n. 46 of 610 F.2d.

statutes which concern the Central Intelligence Agency (CIA). This court has, on occasion, interpreted the CIA's Exemption 3 statute [47] narrowly, so as to make it in effect no broader than Exemption 1.[48] But the statutes regarding the CIA exempt only "intelligence sources and methods" [49] and the "organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." [50] Public Law No. 86–36, on the other hand, protects not only organizational matters of this sort, but also "any information with respect to the activities" of the NSA. Any difference in FOIA Exemption 3 treatment of the CIA and NSA results necessarily from this difference in their respective exemption statutes. Nowhere in the legislative history of Public Law No. 86–36 does Congress express any intent to limit the effect of the clear statutory language. The Senate Report stated that the statute was consistent with legislation for other similarly secretive defense agencies,[51] but it neither stated nor implied that it was identical in its exact scope of protection.[52] Indeed, the House and Senate Reports both show that Congress was fully aware of the "unique and sensitive activities of the Agency," which require "extreme security measures." [53] In light of the peculiar NSA security needs already discussed in this case, Congress certainly had rational grounds to enact for the NSA a protective statute broader than the CIA's. While we note that one district court has narrowed the NSA's exemption under Public Law No. 86–36 to the same gauge as the

CIA's,[54] we can find no basis in law for doing so.

The factual showing required here for NSA to satisfy Exemption 3 is by nature less than for Exemption 1. In its affidavits, the Agency must show specifically and clearly that the requested materials fall into the category of the exemption. Here the Agency stated in its affidavits that all requested documents concerned a specific NSA activity, to wit, intelligence reporting based on electromagnetic signals. These affidavits further explained how disclosure even of descriptions and dates of the material would reveal information integrally related to this NSA activity. This is all that is necessary for the Agency to meet its burden under Public Law No. 86–36 and Exemption 3. A specific showing of potential harm to national security, while necessary for Exemption 1, is irrelevant to the language of Public Law No. 86–36. Congress has already, in enacting the statute, decided that disclosure of NSA activities is potentially harmful.

The proper standard for satisfying Exemption 3 is illustrated by a comparison with our decision in *Founding Church of Scientology*,[55] which reversed a district court grant of summary judgment for NSA. In that case the Agency submitted a conclusory affidavit, with no more specifics than that the requested material was obtained through "lawful signals intelligence activities," and that disclosure would "reveal certain functions and activities of the NSA

---

47. 50 U.S.C. §§ 403(d)(3), 403g (1976).

48. *Phillippi v. Central Intelligence Agency*, 178 U.S.App.D.C. at 243, 249, 50 n. 14, 546 F.2d 1009, 1015–16 n. 14 (1976); *see Ray v. Turner*, 190 U.S.App.D.C. at 299, 587 F.2d at 1196. *But see Baker v. Central Intelligence Agency*, 188 U.S.App.D.C. 401, 405–6, 580 F.2d 664, 668–69 (1978) (holding that exemption under § 403g extends beyond intelligence matters with security nexus).

49. 50 U.S.C. § 403(d)(3) (1976).

50. 50 U.S.C. § 403g (1976).

51. S.Rep. No. 284, 86th Cong., 1st Sess. 2 (1959).

52. *See also* H.R.Rep. No. 231, 86th Cong., 1st Sess. (1959).

53. *Id.* at 6; S.Rep. No. 284, *supra* note 51, at 3 (letter from Office of Secretary of Defense to President of the Senate and Speaker of the House).

54. *Baez v. National Security Agency*, No. 76–1921, memo. and order at 9–11 (D.D.C. 7 April 1978).

55. *Founding Church of Scientology v. National Security Agency*, 197 U.S.App.D.C. ——, 610 F.2d 824 (D.C.Cir. 1979).

. . . ." [56] In the present case, on the other hand, NSA has described the intelligence activity involved, and has shown why disclosure of requested materials could reveal the nature of that activity. Further detail about specific documents would not be relevant to this exemption; Exemption 3 differs from Exemption 1 in that "its applicability depends less on the detailed factual contents of specific documents . . . ." [57] The Agency stated as much detail publicly in this case as it reasonably could without revealing sensitive informa-

tion,[58] and presented further specifics *in camera*. This is the proper way to satisfy FOIA Exemption 3.

The grant of summary judgment by the district court is therefore

*Affirmed.*

---

**56.** *Id.,* at ————— of 197 U.S.App.D.C., at 830–831 of 610 F.2d.

**57.** *Goland v. Central Intelligence Agency,* —— of —— U.S.App.D.C., at 350 of 607 F.2d (D.C. Cir. 1978).

**58.** *See Founding Church of Scientology v. National Security Agency,* at —— n. 72 of 197 U.S.App.D.C., at 832 n. 72 of 610 F.2d.