**JUDICIAL WATCH, INC. Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**Judicial Watch, Inc. Plaintiff,**

**v.**

**United States Department of Justice, Defendant.**

**Nos. CIV.A.1:01CV00639(GK), CIV.A.1:01CV00720(GK).**

United States District Court, District of Columbia.

March 28, 2003.

Larry Klayman, Judicial Watch, Inc., Washington, DC, Paul Orfanedes, Klayman & Associates, PC, Washington, DC, for plaintiff.

Gordon Michael Harvey, U.S. Attorney's Office, Washington, DC, Anne Weismann, United States Department of Justice, Civil Division, Federal Programs, Washington, DC, John Russell Tyler, Susan K. Ullman, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendant.

## MEMORANDUM OPINION

KESSLER, District Judge.

Judicial Watch, Inc., a non-profit public interest organization, filed this case against the United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking documents concerning pardon applications considered or granted by former President William Jefferson Clinton. DOJ withheld disclosure of some FOIA-responsive documents under specific statutory exemptions, many pursuant to the presidential communications privilege of Exemption 5, 5 U.S.C. § 552(b)(5). This matter is now before the Court on Defendant's Motion for Summary Judgment.

FOIA provides a framework for liberal disclosure of government documents. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 360–361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (FOIA reflects "a general philosophy of full agency disclosure"); *United States Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (FOIA facilitates "public access to Government documents") (internal citation omitted). Thus, FOIA "provides that all documents are available to the public unless specifically exempted by the Act itself," and those exemptions "must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

In this case, the Court is well aware that the subject matter of Plaintiff's FOIA request—pardon applications considered or granted by former President Clinton—is of great public interest. *See, e.g.,* Peter Slevin and George Lardner Jr., *Key to Presidential Pardon Is Access,* Washington Post, Jan. 22, 2001, at A1; *Pardons on the Sly,* N.Y. Times, Jan. 25, 2001, at A22. However, as strong a supporter as the Court is of FOIA's liberal disclosure of government documents and as great as the public interest in disclosure of the documents requested by Plaintiff may be, the case law concerning the ability of the government to withhold certain documents under the presidential communications privilege is clear, as will be detailed below.

As a threshold matter, it is necessary to understand that we cannot view the presidential communications privilege only in the context of its use by an individual President to shield information concerning his controversial decisions from the public. Rather, the privilege must be viewed in its broader, historical context, allowing presidential advisors to provide the President with the fullest and most candid information and advice regarding decisions to be made in many sensitive areas, including the granting or denial of pardon requests. Thus, the presidential communications privilege serves as a vitally important protection for the Presidency as an institution.

Accordingly, upon consideration of the Motion, Opposition, Reply, and the entire record herein, Defendant's Motion for Summary Judgment is **granted**.

## I. BACKGROUND [1]

On February 22, 2001, Plaintiff made a FOIA request to DOJ seeking all documents from the Office of the Deputy Attorney General that "refer or relate...in any way" to pardon applications considered or granted by former President Clinton on January 21, 2001.[2] On March 6, 2001, DOJ acknowledged receipt of Plaintiff's FOIA request and initiated a search for documents responsive to that request. However, DOJ also informed Plaintiff that it would be unable to complete its processing of Plaintiff's FOIA request within the statutory time frame and asked that the Plaintiff either narrow the scope of its request or agree to an alternative time frame for processing its request. On March 23, 2001, Plaintiff filed the instant action.

On June 11, 2001, DOJ informed Plaintiff that it had completed its search, having located 17 boxes of potentially responsive documents. By August 9, 2001, DOJ had identified 5,258 pages of documents responsive to Plaintiff's FOIA request. It released 597 pages to Plaintiff in full, some after advance payment of applicable processing fees, and identified an additional 433 pages that could be released to Plaintiff upon payment of applicable fees. However, DOJ withheld 4,825 pages of responsive documents in full and 40 pages in part, citing specific FOIA exemptions. Defendant withheld 4,341 pages under FOIA Exemption 5 as subject to the presidential communications privilege and 524 pages under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), as constituting a clearly unwarranted invasion of privacy.[3]

## II. STANDARD OF REVIEW

FOIA "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." *Oglesby v. United States Dep't of Army,* 79 F.3d 1172, 1176 (D.C.Cir.1996) (citing 5 U.S.C. § 552(a), (b)). In this Circuit, the burden of justifying nondisclosure under these exemptions is on the government, *Petroleum Information Corp. v. United State Dep't of the Interior,* 976 F.2d 1429, 1433 (D.C.Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)), and the agency must submit an index of all withheld material, *Vaughn,* 484 F.2d at 826.

In determining whether the government has properly withheld requested documents under any of FOIA's exemptions, the district court conducts a *de novo* review of the government's decision. 5 U.S.C. § 552(a)(4)(B). In doing so, courts "must accord substantial weight to the Agency's determinations." *Gardels v. C.I.A.,* 689 F.2d 1100, 1104 (D.C.Cir.1982). The Court may award summary judgment in a FOIA case solely on the basis of information provided in affidavits or decla-

---

1. Summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Consequently, unless otherwise noted, the Court states only uncontroverted facts.

2. Plaintiff made an identical request to the Office of the Pardon Attorney on January 29, 2001. *See Judicial Watch, Inc. v. U.S. Dep't of Justice,* No. 01–720 (D.D.C. filed April 4, 2001). The Court consolidated these cases on June 22, 2001.

3. Defendant also determined that some of these documents could be withheld in whole or in part under the deliberative process privilege of FOIA Exemption 5. As the issue can be resolved by assertion of the presidential communications privilege and as an unwarranted invasion of privacy, the Court will not address Defendant's deliberative process privilege claims.

rations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981); *see also Goland v. C.I.A.,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Hayden v. N.S.A.,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

## III. ANALYSIS

Defendant claims that it properly withheld 4,341 pages of responsive documents pursuant to the presidential communications privilege of FOIA Exemption 5, 5 U.S.C. § 552(b)(5), because they relate to "the exercise by then-President Clinton of his expressly delegated constitutional authority to grant reprieves and pardons." Def.'s Memo. at 1. In addition, Defendant argues that it properly withheld 524 pages as a clearly unwarranted invasion of privacy under Exemption 6 because "the identities and personal histories of these applicants...do not bear in any way on the Justice Department's performance of its statutory duties or operations." *Id.* at 3.

In opposition, Plaintiff argues that these documents have been improperly withheld by DOJ. First, Plaintiff claims that the presidential communications privilege does not apply to all of the withheld documents because the privilege protects neither documents of a former president nor communications between non-White House advisers. Second, Plaintiff argues that there is no clearly unwarranted invasion of privacy under Exemption 6 because its request "does not go to personal information about these individuals, but rather the basis on which [former President Clinton] granted them." Pl.'s Opp'n at 12.

### A. DOJ Has Properly Withheld 4,341 Pages of Responsive Documents Pursuant to the Presidential Communications Privilege of FOIA Exemption 5.

█ FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party... in litigation with the agency". 5 U.S.C. § 552(b)(5). In this case, DOJ has withheld documents pursuant to the presidential communications privilege, which specifically protects from disclosure information concerning the President's decisionmaking process. Accordingly, the privilege "applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones." *In re Sealed Case,* 121 F.3d 729, 745 (D.C.Cir.1997) (upholding assertion of the presidential communications privilege in a FOIA action seeking information concerning the President's appointment and removal power).

The presidential communications privilege "is fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon,* 418 U.S. 683, 708, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (denying a broad, undifferentiated privilege claim based on the public interest in presidential confidentiality, where the special prosecutor had demonstrated a specific need for the information). Because the privilege is "based on the need to preserve the President's access to candid advice," the President may invoke the privilege "when asked to produce documents...that reflect presidential decisionmaking and deliberations and that the

President believes should remain confidential." *In re Sealed Case,* 121 F.3d at 744.

Once the President invokes the privilege, the documents become presumptively privileged. *United States v. Nixon,* 418 U.S. at 708, 94 S.Ct. 3090. This presumption "can be overcome only by an adequate showing of need" by those seeking the privileged documents. *In re Sealed Case,* 121 F.3d at 745. Thus, the presidential communications privilege "affords greater protection against disclosure" than other Exemption 5 privileges such as the deliberative process privilege. *Id.,* 121 F.3d at 746.

On repeated occasions, the Supreme Court has emphasized the deference that courts should give to the President's need to protect communications with advisors in order to effectively carry out his executive powers.

> The expectation of a President to the confidentiality of his conversations and correspondence...has all the values to which we accord deference... [and is necessary] for protection of the public interest in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking. A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately.

*United States v. Nixon,* 418 U.S. at 708, 94 S.Ct. 3090. The Court has emphasized that the "effective discharge of [Presidential] duties" depends on the ability of the President "to receive [ ] full and frank submissions of facts and opinions" from advisers, which requires "some assurance of confidentiality." *Nixon v. Administrator of General Services,* 433 U.S. 425, 448–49, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).

Plaintiff argues that the presidential communications privilege is completely inapplicable in this action because it is being asserted to withhold documents of a *former* president. However, our Court of Appeals has recognized that presidential privilege "does not disappear merely because the president who made or received the communication dies, resigns, or has completed his term." *Dellums v. Powell,* 561 F.2d 242, 248 (D.C.Cir.1977) (holding the presumption of privilege by former President Nixon was sufficiently overcome by the plaintiffs' demonstrated specific need for disclosure of the tapes and transcripts of White House conversations).

It is true that "the significance of the assertion by a former president is diminished" when the incumbent president does not agree that nondisclosure of documents is necessary to the protection or operation of the presidency. *Dellums,* 561 F.2d at 248. However, in this case, the incumbent President supports the invocation of the privilege on behalf of the institution of the Presidency. *See* Def's Reply at 4. The Supreme Court has recognized that "the incumbent President is vitally concerned with and in the best position to assess the present and future needs of the Executive Branch, and to support invocation of the privilege accordingly." *Nixon v. Administrator of General Services,* 433 U.S. at 449, 97 S.Ct. 2777 (rejecting former President Nixon's claim of presidential privilege where neither President Ford nor President Carter supported that claim). Accordingly, the Court gives great deference to the present administration's assertion of the presidential communications privilege on behalf of pardon documents of a former president.

█ Plaintiff also argues that even if the presidential communications privilege allows DOJ to withhold some of the documents responsive to its FOIA request, the privilege cannot be invoked for documents

that did not directly involve former President Clinton or his White House staff. Plaintiff relies on the Court of Appeals statement that "the privilege should not extend to staff outside the White House in executive branch agencies." *In re Sealed Case*, 121 F.3d at 752. In that case, the Court of Appeals was concerned that the privilege would be extended to "a large swath of the executive branch," and thought that only communications in the White House were "close enough to the President to be revelatory of his deliberations or to pose a risk to the candor of his advisers." *Id.*

However, in this case, DOJ has withheld some documents concerning communications from the Office of the Pardon Attorney, the primary job of which is to utilize DOJ employees to assist the President in his pardon decisionmaking. Thus, the justification for the privilege still applies because it is a "limited extension of the privilege beyond the President to his immediate advisers" so that they may "perform detailed analyses of several different [ ] options before coming to closure on a recommendation for the Chief Executive." *Id.*, 121 F.3d at 749–50. Because the "documents in question were generated in the course of advising the President in the exercise of . . . a quintessential and nondelegable Presidential power . . . [and] nonetheless are intimately connected to his presidential decisionmaking," *id.*, 121 F.3d at 752–53, DOJ properly invoked the presidential communications privilege to withhold documents involving communications directly relating to former President Clinton's pardon decisions even if they did not involve direct communication with him or his White House staff.

"The President's need for complete candor and objectivity from advisers calls for great deference from the courts." *United States v. Nixon*, 418 U.S. at 706, 94 S.Ct.

3090. All 4,341 pages of documents withheld by DOJ pursuant to the presidential communications privilege pertain to advice, recommendations, and materials generated for the sole purpose of allowing former President Clinton to make decisions regarding pardons—"a quintessential and nondelegable Presidential power." In addition, there is no evidence that DOJ was attempting to use the privilege in order to withhold non-pardon information. Accordingly, DOJ has properly invoked the presidential communications privilege of FOIA Exemption 5 to withhold these 4,341 pages of documents responsive to Plaintiff's FOIA request.

**B. DOJ Has Properly Withheld 524 Pages of Responsive Documents Pursuant to FOIA Exemption 6.**

■ Defendant claims that it has properly withheld 524 pages of documents responsive to Plaintiff's FOIA request (consisting primarily of individual petitions for pardon with accompanying exhibits and attachments) as a clearly unwarranted invasion of privacy under Exemption 6. Plaintiff argues that these documents have been improperly withheld because its FOIA request "does not go to personal information about these individuals, but rather the basis on which [former President Clinton] granted them," and the personal information concerns convicted felons who are not entitled to the same privacy rights as other American citizens. Pl.'s Opp'n at 12.

However, regardless of Plaintiff's interest in these documents, disclosure would still provide Plaintiff with non-public, personal information regarding the applicants, the crimes they committed, and their lives before and after their convictions, including the personal information of other third parties. *See* Def.'s Memo. at 34. The Supreme Court has found that requests for the type of information withheld by

DOJ in this case can reasonably be interpreted as unwarranted invasions of personal privacy subject to privacy protection under FIOA, even if the information concerns possible felons. *See United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (allowing the contents of FBI rap sheets, which include information concerning arrests, indictments, acquittals, convictions, and sentences, to be withheld under FOIA's law enforcement exemption). Thus, DOJ could properly withhold the personal information included in the pardon applications at issue here under FOIA Exemption 6 as an invasion of privacy.

Plaintiff also argues that a balancing of public and private interest in disclosure of this information does not indicate that such disclosure is clearly unwarranted. However, the Supreme Court has clearly stated that FOIA's purpose in opening agency action to public scrutiny "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporters Comm. for Freedom of Press*, 489 U.S. at 773, 109 S.Ct. 1468. Given that the Court has already determined that DOJ actions in advising on the pardon decisions of a President is protected by the presidential communications privilege, there is no indication that disclosure of the personal information at issue would contribute significantly to public understanding of non-privileged activities of the government.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [# 33] is **granted**. An Order will issue with this Opinion.

### ORDER

Judicial Watch, Inc., a non-profit public interest organization, filed this case against the United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking documents concerning pardon applications considered or granted by former President William Jefferson Clinton. DOJ withheld disclosure of some responsive documents pursuant to specific statutory exemptions, many under the presidential communications privilege of FOIA Exemption 5, 5 U.S.C. § 552(b)(5). This matter is now before the Court on Defendant's Motion for Summary Judgment [# 14]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, for the reasons discussed in the accompanying Memorandum Opinion, it is hereby

**ORDERED**, that Defendant's Motion for Summary Judgment [# 33] is **granted**.