**Stephen C. SCHLESINGER, Plaintiff,**

**v.**

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

**Civ. A. No. 82–1749.**

United States District Court, District of Columbia.

March 5, 1984.

Thomas M. Susman, Ropes & Gray, Washington, D.C., for plaintiff.

Robert E.L. Eaton, Jr., Asst. U.S. Atty., Civil Division, Lee S. Strickland, Sp. Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

FLANNERY, District Judge.

This matter came before the court on defendant's motion for summary judgment. Plaintiff in this case seeks, through the Freedom of Information Act (FOIA), access to CIA records relating to the planning, financing and executing of the 1954 coup in Guatemala. The CIA contends that this information is protected by FOIA exemptions one and three. Plaintiff disagrees, and contends that the case in its current posture cannot properly be disposed of on summary judgment. For the reasons set forth below, the court holds that summary judgment is appropriate, and grants defendant's motion.

## BACKGROUND

The complaint in this case was filed after plaintiff exhausted his administrative attempts to obtain CIA records relating in any way to the 1954 coup in Guatemala. By letter dated July 12, 1982, after commencement of this action, the CIA provided plaintiff with 31 responsive documents. On September 30, 1982, after further searching, the CIA turned over 134 additional responsive documents. At a status conference shortly thereafter, plaintiff questioned the adequacy of defendant's search, and defendant agreed to institute a new and more thorough search. As a result of this search, defendant discovered a massive "operational" file, containing some 180,000 pages of documents concerning United States involvement in the coup, and so informed plaintiff and the court. According to plaintiff's counsel, defendant's attorney represented to him and others, prior to thorough review of the operational files, that the CIA would not disclose any of the documents therein, *see* Susman Affidavit at 4–5. Defendant's counsel informed the court on January 14, 1983, that the Agency had completed its review of the bulk of the materials and had concluded that it would not disclose any documents.

On January 24, 1983, CIA Acting Deputy Director for Operations Clair E. George filed a public affidavit, wherein he stated that the disputed documents consisted "strictly of raw, operational documents compiled contemporaneously with the Agency's covert involvement in the 1954 Guatemala coup," and that the documents "reflect the specific and particular intelligence activities undertaken by Agency officers and assets, the methods utilized in the conduct of these activities, and the intelligence sources providing information to the United States." George Affidavit at 5. Mr. George declared that the release of *any* of the information in the file could reasonably be expected to cause damage, most probably serious damage, to the national security by

(a) revealing particular intelligence activities and methods of continuing utility to the United States;

(b) revealing particular intelligence sources who may remain in danger and which may inhibit prospective sources from agreeing to provide information;

(c) revealing capabilities and the extent of CIA knowledge which may negate current intelligence activities;

(d) officially detailing the nature and extent of the CIA role in the 1954 Guatemala coup, risking damage to American foreign relations throughout the world and particularly in Central America at this time in light of the delicate political situation in the Central American area;

(e) officially detailing the role undertaken and the assistance given by other foreign countries, risking damage to the foreign relations between such countries and the United States;

(f) providing significant foreign relations and propaganda advantage to hostile foreign governments who could use such information against the United States in their dealings with governments in Central America and elsewhere; and

(g) providing a significant counterintelligence advantage to hostile foreign governments who could use such information to counter current United States intelligence collection activities and objectives.

George Affidavit at 7. Mr. George concluded that the information sought by plaintiff was all properly classified pursuant to Executive Order 12356, 47 Fed.Reg. 14874-84 (1982), and was exempt from disclosure under FOIA Exemption 1. *Id.* at 5-8. In addition, Mr. George determined that because the documents sought contain information about intelligence sources and methods, they are protected from disclosure by 50 U.S.C. § 403(d)(3) and 50 U.S.C. § 403g, and as such fall within the scope of FOIA Exemption 3. *Id.* at 5, 11-12. Mr. George further determined that other than the description of the documents described above and the justifications for non-disclosure given, no further description or justification could be offered in a public affidavit without compromising critical intelligence considerations. *Id.* at 8. He, along with counsel for the CIA, indicated that a more detailed classified affidavit would be prepared for the court's *in camera* review if necessary.

Mr. George stated that he was "fully aware that significant information and speculation concerning the 1954 Guatemala coup is in the public domain," *id.* at 8, but stressed that the public presence of such unofficial information does not reduce the damage that would be caused by the official revelation of the requested information. *Id.* at 9-10. He also recognized that the United States Government has *officially* acknowledged "the fact that the Central Intelligence Agency had some involvement in the Guatemala revolution," but emphasized that "to the best of [his] knowledge, no other facts or details have ever been officially disclosed and confirmed." *Id.* at 9. He stated that the official acknowledgement "was very limited in scope and did not with particularity indicate or describe which, if any, military or political forces were supported or opposed, or what, if any, intelligence activities were undertaken by the CIA or others." *Id.* at 9-10. Mr. George concluded that any further official public disclosure of the purpose, extent, or nature of United States involvement in the coup "could reasonably be expected to cause serious damage to the national security of the United States notwithstanding the passage of time." *Id.* at 10.

Plaintiff contended that the CIA could not properly withhold each and every line of the disputed documents based solely on the George Affidavit. Plaintiff challenged the completeness of the CIA's review of the 180,000 pages of responsive documents and its determination that none of the material could be segregated and released, and demanded that the CIA provide a more detailed description of the documents and its justifications for withholding them. *See* Plaintiff's Memorandum of Points and Authorities In Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Opposition) at 3. Plaintiff requested that the CIA be required to submit a classified affidavit *in camera*, along with sample documents for the court's review, and that plaintiff's counsel be permitted to participate in the court's *in camera* review. *Id.* Plaintiff also requested that further discovery be permitted to determine, *inter alia*, the extent of official and unofficial disclosure of information about the Guatemala coup, *Id.* at 8-9. Plaintiff contends that all information that has "already been made public by the government or by a third party pursuant to official authorization" and information which, if released, "would cause no injury to national defense or foreign policy interests" should be disclosed. *Id.* at 3-4.

On October 5, 1983, the court ordered that the CIA submit for the court's *in camera* review a classified *Vaughn* affidavit to further describe the disputed documents and further justify their non-disclosure. The court denied the unusual request of plaintiff's counsel to participate in its *in camera* review of the classified affidavit, *see* October 5 Memorandum Order. Shortly thereafter, the CIA submitted a detailed and lengthy classified affidavit and several sample documents. The court conducted a careful *in camera* review of the CIA's submission. The court notes that the CIA's *in camera* submission in this case was most thorough and well prepared.

## DISCUSSION

### A. *Propriety of Summary Judgment*

■ In a FOIA case, the court may grant summary judgment only if it is satisfied that the moving party has proven that no substantial and material facts are in dispute and that it is entitled to judgment as a matter of law. *McGehee v. CIA,* 697 F.2d 1095, 1101 (D.C.Cir.1983). The agency has the burden of justifying non-disclosure, *Coastal States Corp. v. Department of Energy,* 617 F.2d 854, 868 (D.C.Cir.1980), and must sustain its burden through submission of detailed affidavits which identify the documents at issue and why they fall under the claimed exemptions. *Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). If the affidavits are clear, specific, and detailed, and there is no evidence in the record contradicting them or demonstrating agency bad faith, then the court need not question their veracity and must accord them substantial weight in its decision, *Taylor v. Department of the Army,* 684 F.2d 99, 106–07 (D.C.Cir.1982); *Hayden v. National Security Agency,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). If, as here, the government asserts that detailed public description of the disputed documents would cause danger to the national security, then the court may order submission of classified affidavits as is necessary for the court's *de novo* review of the agency's exemption claims; and such classified affidavits must also be accorded substantial weight, *see Hayden,* 608 F.2d at 1384–87; *Phillipi v. CIA,* 546 F.2d 1009, 1013 (D.C.Cir.1976).

Plaintiff in this case has taken a rather unusual task in opposing summary judgment. He has filed an affidavit, purportedly pursuant to Fed.R.Civ.Pro. 56(f), in which he has claimed that he believes there are material factual disputes but that he is unable to develop evidence to demonstrate this unless further discovery is permitted, *see* Susman Affidavit.[1] In particular, plaintiff disputes that defendant has conducted a complete and thorough review of the documents at issue, disputes that defendant has properly classified the documents according to applicable Executive Orders, claims that defendant has "prejudged" the non-disclosability of the documents and their segregability, and claims that further discovery would show that the CIA has revealed more than the mere fact of its involvement in the coup and has pre-cleared for publication many books and articles, which plaintiff claims to constitute CIA-approved disclosure. *See* Susman Affidavit; Plaintiff's Opposition at 3–4, 8–9; Plaintiff's Motion to Compel Defendant to Respond to Certain Interrogatories.

■ Plaintiff's attempt to create factual disputes by the mere allegation, couched in a Rule 56(f) affidavit, that the agency's classification and review procedures and exemption and segregability decisions are inadequate must fail in the face of the agency's detailed *Vaughn* affidavits. The court shared plaintiff's concern with the adequacy of CIA procedures as revealed in Mr. George's public affidavit, but the Agency stressed that further public description and justification would jeopardize national security interests. In accordance with well established guidelines, and to alleviate the court's concern with the adequa-

---

**1.** Defendant filed a motion to strike this affidavit, which was executed by plaintiff's counsel, on the ground that the declarations contained therein were not based on personal knowledge, concerned matters about which the affiant, as plaintiff's counsel, was not legally competent to testify, and consisted of hearsay statements, opinions, conclusions, and matters discussed in privileged settlement negotiations. Plaintiff characterized the affidavit as a Rule 56(f) affidavit, but defendant argued that the affidavit is, in fact, a disguised Rule 56(e) affidavit which must

meet the evidentiary standards required by that rule.

The court agrees with defendant that the affidavit is of little, if any, evidentiary value. However, Rule 56(f) permits the filing of such affidavits, and the court sees no reason to strike it from the record. Therefore, defendant's motion to strike is denied. As discussed below, however, the court does not believe that this affidavit and the affidavit executed by plaintiff raise a triable issue of fact or require the court to permit further discovery.

cy of CIA review and procedures, the court ordered submission of detailed affidavits *in camera, see Hayden*, 608 F.2d at 1384–87; *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir.1978); *Phillipi*, 546 F.2d at 1013.[2] Once proper affidavits have been submitted, and after *in camera* review, a FOIA case has reached a posture where *the court* can determine whether the agency's classification and review procedures have been proper and whether factual disputes exist as to the adequacy of such procedures. At this point, a plaintiff cannot create factual disputes over these issues by merely alleging, without evidence, that further discovery would reveal the inadequacy of agency procedures. To permit this would make a mockery of the elaborate efforts of the District of Columbia Circuit to develop fair and efficient procedures in FOIA cases; and similar attempts to avoid summary judgment, after agency submission of adequate *Vaughn* affidavits and after *in camera* review, have been uniformly rejected, *see Exxon Corp. v. Federal Trade Commission*, 663 F.2d 120, 126–28 (D.C.Cir.1980); *Military Audit Project v. Casey*, 656 F.2d 724, 750–51 (D.C.Cir.1981); *Goland v. Central Intelligence Agency*, 607 F.2d 339 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *compare Goland*, 607 F.2d at 356–66 (Bazelon, J., dissenting).

■ In this case, defendant's public and classified affidavits combined to provide the court with clear, specific, and detailed descriptions of the disputed documents, the agency's classification procedures, and the agency's justifications for withholding the documents. Absent an allegation of agency bad faith, the court has no reason to question the veracity of the affidavits, and is convinced, based on its review of the affidavits, that the agency has fully reviewed the disputed documents and has complied with applicable classification procedures.

■ Plaintiff in this case has not alleged agency bad faith or offered evidence that the agency has not complied with applicable procedures, although he has claimed that defendant's counsel "prejudged" the disclosability of the documents, and has implied that the agency's late discovery of its operational file raises suspicions. But piecemeal discovery and disclosure of documents does not indicate agency bad faith, *Military Audit*, 565 F.2d at 754; *Goland*, 607 F.2d at 355, and the mere allegation that defendant's counsel formed an opinion on the disclosability of the documents does not demonstrate that the agency acted in bad faith, especially absent tangible evidence to that effect, *see Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770, 771 (D.C.Cir.1981); *Military Audit*, 656 F.2d at 754; *Lesar v. United States Department of Justice*, 636 F.2d 472, 481 (D.C.Cir.1980); *Ray*, 587 F.2d at 1195. In fact, the detailed nature of defendant's *in camera* affidavits and the sample documents reviewed *in camera* convince the court that defendant's counsel's prejudgment, even if proven, would have been quite justified—and that any agency prejudgment did not influence the thoroughness of the agency's review of the documents. The court concludes that there are no factual disputes regarding the

---

**2.** The court notes that in its October 5, 1983 Memorandum Order requiring the submission of classified *in camera* affidavits, it explicitly reserved judgment on whether further *public* description of the disputed documents and the agency's justifications for non-disclosure would be required. The agency represented in its public affidavit, and again in its *in camera* affidavit, that further public description and justification would jeopardize national security interests, *see* George Affidavit at 8. After *in camera* review of the classified affidavit and sample documents, the court agrees with defendant that further public description of the documents and the agency's justifications for withholding them would jeopardize national security interests and is not required. Further, after *in camera* review, the court is convinced of the wisdom of its decision not to permit plaintiff's counsel to participate in the court's *in camera* review, *see* October 5, 1983 Memorandum Order at 3. The documents being withheld are extremely sensitive, and the detailed, clear, and specific nature of the classified affidavit, combined with the agency's voluntary submission of sample documents, fully provided the court with information that would have been provided by the adversary process—but in a method that protected legitimate security interests.

completeness of the agency's review and classification procedures.

■ Plaintiff's contention that he has raised a *material* factual dispute, or that further discovery is necessary, over the issue of the extent of CIA disclosure of United States involvement in the coup must also be rejected, though for different reasons. Plaintiff cannot be said to have raised a dispute over the extent of the CIA's *official* disclosure in this area, once "official disclosure" is properly defined; and any dispute raised over the extent of indirect, or unofficial disclosures is not material to the agency's exemption claims. As further discussed in Part B of this opinion, the District of Columbia Circuit recently affirmed that there is a critical distinction between *official* government disclosures or confirmations and indirect, or unofficial disclosures for purposes of FOIA national security exemptions, *see especially Afshar v. Department of State*, 702 F.2d 1125, 1130–34 (D.C.Cir.1983). Although plaintiff argues to the contrary, only "official disclosures"—direct acknowledgements by an authoritative government source—about information sought in a FOIA case can preclude an agency's invocation of an otherwise properly invoked Exemption 1 or Exemption 3 claim. Plaintiff attempts to lump disclosures from different sources together and characterize them as "official", but both *Afshar, id.*, and *Military Audit*, 656 F.2d at 742–45, establish that CIA clearance of books and articles, books written by former CIA officials, and general discussions in Congressional publications do *not* constitute official disclosures. Plaintiff alleges that he believes there is a factual dispute about, and seeks further discovery on, the extent of disclosures from such sources, *see* Susman Affidavit at 3–4; Plaintiff's Motion to Compel at 8–15. But because such disclosures are unofficial and therefore not relevant to the CIA's exemption claims, any factual dispute about the extent of such disclosures is immaterial. Plaintiff has offered no material evidence that the CIA has *directly* disclosed or confirmed any more than the fact that the United States was

involved in the coup. The court, absent such evidence or evidence of agency bad faith, finds no reason to question the veracity of Mr. George's declaration that *official* disclosure has been so limited. As the court held in *Afshar*, 702 F.2d at 1130, absent such evidence of disclosure produced by a FOIA plaintiff, the court need not place the burden upon the agency to prove the secrecy of disputed documents—especially when the agency has already asserted that official disclosure has been strictly limited, as here.

In sum, the court holds that plaintiff's allegations that factual disputes exist that preclude summary judgment are insufficient, and plaintiff's motion for further discovery must be denied. Plaintiff has not shown that the agency has acted in bad faith, and the agency's detailed public and *in camera* submissions belie any such claim. Plaintiff's allegations regarding the nature and extent of the CIA's review of the contested documents must be rejected because the court is satisfied, after *in camera* review, that the CIA's review and classification procedures were complete and thorough. Plaintiff has provided the court with no reason to doubt the CIA's sworn assertion that official disclosure has been limited to the bare recognition of United States involvement in the coup, and factual disputes over the extent of unofficial disclosures are immaterial. There being no material issues of fact in dispute, the court may proceed to evaluate the merits of the CIA's summary judgment motion by considering the validity of the agency's FOIA exemption claims.

### B. *FOIA Exemption 1.*

■ The CIA claims that all of the approximately 180,000 pages of its operational file on the 1954 coup in Guatemala are exempt from disclosure under FOIA Exemption 1. Exemption 1 applies to documents that are

(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national

defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1). In order to fall within Exemption 1, the agency must demonstrate that it followed proper procedures in classifying the documents at issue and that the records logically fall within the classification requirements and the exemption because disclosure would cause danger to national security, *see Lesar*, 636 F.2d at 479–85. In order to meet its burden, the agency must provide the court with affidavits that describe the documents with sufficient particularity, and must justify its exemption claim by providing a detailed assessment of the harms that would flow from disclosure. If the affidavits are sufficient, and absent allegations of agency bad faith, the court must give the agency's determinations substantial weight, *Taylor*, 684 F.2d at 106–07; *Hayden*, 608 F.2d at 1387.

In this case, the public and *in camera* affidavits provided by the agency clearly establish, in great detail, that proper procedures were followed in reviewing and classifying the documents. The documents were originally classified under previous Executive orders, and were recently reviewed under the terms of Executive Order 12356, 47 Fed.Reg. 14874–84 (1982). As set forth in the George Affidavit and elaborated upon in the agency's *in camera* submissions, the documents at issue were all reviewed and determined to fall within E.O. 12356, § 1.3(a)(4) or (5), which provides that information may be classified if it concerns "intelligence activities (including special activities), or intelligence sources and methods," or "foreign relations or foreign activities of the United States." CIA officials with TOP SECRET classification authority reviewed each document, and determined that it fell, in its entirety, within one of these classification categories, and that it had been properly marked according to the Executive Order in effect at the time of its

origination.[3] Finally, as required by E.O. 12356 § 1.3(b), reviewing officials determined that, with respect to each document, disclosure could reasonably be expected to cause damage to the national security. In addition to a particularized assessment of the harms that could result from release of each document set forth in the agency's *in camera* submission, the harms that could be caused were summarized in the public George Affidavit at 7, reprinted in the Background section of this opinion.

 The court was quite impressed with the detail, thoroughness, and clearness with which the agency's *in camera* affidavits, supplemented by Mr. George's public affidavit, described the documents at issue and the classification procedures utilized, and explained why each document falls within a classification category and why release of each document could cause damage to the national security. The court must give substantial weight to the agency's determinations, especially in a national security case, in which the agency possesses necessary expertise to assess the risks of disclosure, *see Halperin v. Central Intelligence Agency*, 629 F.2d 144, 148 (D.C. Cir.1980). In this case, the affidavits established the necessary "logical nexus" between the documents and the claimed exemption—the documents were shown clearly to fit within one of the categories enumerated for classification under E.O. 12356, the applicable Executive Order, and the affidavits depicted with specificity the nature of the documents at issue and the harm that could befall the national security if they are disclosed, *see Baez v. United States Department of Justice*, 647 F.2d 1328, 1336 (D.C.Cir.1980). The court, with due deference to the agency's affidavits and agency expertise, holds that the CIA has met its burden of demonstrating that each and every line in each and every docu-

---

**3.** Executive Order 12356 does not require re-marking of previously classified documents, but explicitly states that "[i]nformation assigned a level of classification under predecessor orders shall be considered as classified at that level of classification despite the omission of other [now] required markings." E.O. 12356, § 1.5(e).

ment reviewed is properly withheld pursuant to FOIA Exemption 1.[4]

Plaintiff in this case asks the court to find that the CIA's assessment of the risks that could accompany disclosure of its operational file is unreasonable and must be rejected for two reasons. First, argues plaintiff, the documents are quite old, and any harm that might have arisen from their disclosure 30 years ago, shortly after the Guatemala coup, can no longer be expected. Second, argues plaintiff, no harm could possibly flow from release of the operational file because its contents have become "known" through numerous publications about the coup, including plaintiff's own book, and through official and unofficial government disclosures. The court rejects both arguments. First, the court notes that the age of the documents has been rendered inconsequential since the CIA *recently* reviewed them and determined that despite their age, harm could still flow from their release, George Affidavit at 10; *see Shaw v. Department of Defense*, No. 82–2441, slip op. at 4 (D.D.C. Oct. 13, 1983). Even if the court were not required to give great deference to the agency's assessment, it, too, would conclude that release of the operational file detailing the CIA's involvement in the coup could cause substantial harm to national security despite the age of the documents. Conditions in Central America are extremely sensitive today, and any information about past covert activity by the United States in this area could have harmful effects of precisely the sort enumerated in the George Affidavit.

With regard to plaintiff's argument that no harm would result from release of the operational file because details are already "known" about the CIA's involvement in the coup, the court must follow the reasoning of the District of Columbia Circuit in *Afshar, supra.* As discussed above, plaintiff has not properly disputed the fact that the only official agency disclosure of Unit-

ed States involvement in the coup is the mere admission of such involvement. There has been no further official executive acknowledgement and, as defendant stresses, certainly no official disclosure of any of the sensitive operational details of the CIA's covert involvement in the coup, *see* Defendant's Reply Memorandum to Plaintiff's Opposition at 6. Plaintiff, however, points to numerous publications about the coup, some of which received CIA prepublication clearance, to a Final Report of the Senate Select Committee on Intelligence, and to one very brief CIA document released under FOIA. He argues that because the information contained in these public sources duplicates the information in the CIA's operational file, the file's release would pose no danger to national security. Therefore, argues plaintiff, the documents are not protected by Exemption 1. Under the *Afshar* line of cases, there are at least two flaws in plaintiff's argument. First, plaintiff has not demonstrated that the information contained in these sources is in fact duplicative of the information in the CIA file, *see Afshar*, 702 F.2d at 1132–33, especially with respect to the one document, a CIA cable, that might be said to constitute an official disclosure. This document is only one page long, and contains no significant information. But second, and dispositive here, is the fact that the "disclosures" plaintiff points to, with the possible exception of the one-page CIA document, are *not* official disclosures and therefore should have no effect on the court's disposition of the Exemption 1 issue. As established by *Military Audit*, 656 F.2d at 742–45, Congressional materials such as the Senate Report plaintiff points to do not constitute "official disclosures", and neither do books and articles written by former CIA officials or material precleared by the CIA for publication, *see also Afshar*, 702 F.2d at 1133–34. As *Afshar, Military Audit*, and *Phillipi v. CIA*, 655 F.2d 1325,

---

**4.** During its *in camera* review, the court was careful to ensure that the agency could justify its withholding of each line of each document. The court agrees with defendant that there are no segregable portions of any of the disputed documents that could be released without compromising legitimate security interests.

1332–33 (D.C.Cir.1981), stress, there is a critical distinction between such unofficial disclosures and "official" government disclosure in terms of the effect of disclosure and the harms it can cause. Unofficial disclosures are not generally treated in the international community in the same way as are official disclosures. As the *Afshar* court states, "[u]nofficial leaks and public surmise can often be ignored by foreign governments, ... but official acknowledgement may force a foreign government to retaliate," or may have an adverse impact on foreign relations. In this case, the CIA has emphasized that despite the numerous unofficial disclosures of information about the 1954 Guatemala coup that plaintiff points to, serious harm would still be caused by the release of its operational file since such release would constitute the *official* disclosure of extremely sensitive information not heretofore officially disclosed. In light of *Afshar* and the other cases discussed, the court agrees.

In sum, the court holds that the CIA has followed proper classification procedures and has justified the non-disclosure of each and every line of each document by submission of detailed public and classified affidavits. In addition, the court agrees with the agency that despite the age of the contested documents and despite widespread unofficial disclosures of United States involvement in the coup, the official release of the operational file sought would be likely to cause serious harm to the national defense and to U.S. foreign policy interests. Therefore, each document is properly exempt under FOIA Exemption 1.

### C. *FOIA Exemption 3.*

█ Although this court has already held that the disputed documents are exempt from disclosure in their entirety under FOIA Exemption 1, the CIA also claims that the documents are exempt under Exemption 3. The court agrees, and holds independently and alternatively that the documents involved in this case are protected from disclosure under Exemption 3, *see Gardels v. CIA,* 689 F.2d 1100, 1107 (1982).

FOIA Exemption 3 provides that disclosure is not required with respect to documents that are

specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). In this case, the CIA argues that the documents are exempt from disclosure by either the National Security Act of 1947, 50 U.S.C. § 403(d)(3), or by the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403g. These two statutes have consistently been held to be exempting statutes of the type described in FOIA Exemption 3, *Halperin,* 629 F.2d at 147 & cases cited in n. 7. Section 403(d)(3) of the National Security Act of 1947 provides that the "Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure," and Section 403g of the Central Intelligence Agency Act of 1949, which further implements § 403(d)(3), exempts the CIA from any law that requires the publication or disclosure of the organization, function, names, official titles, salaries, or numbers of personnel employed by the agency.

In this case, the agency has stated in its public affidavit that disclosure of the documents at issue would reveal particular intelligence activities, sources and methods and would reveal names, titles, and numbers of CIA employees and the functions such employees were assigned, *see* George Affidavit at 11–12. It is the "considered judgment" of Mr. George that disclosure of this information would cause the particular harms outlined above, and his conclusion that the operational file in its entirety falls squarely within the scope of 50 U.S.C. § 403(d)(3) and § 403g.

After consideration of Mr. George's public affidavit, the classified affidavit submitted *in camera,* and sample documents submitted *in camera,* the court finds that the agency's determination that the con-

tested documents are covered by § 403(d)(3) and § 403g was eminently reasonable. The agency's review was complete and its affidavits explaining the agency's reasoning on this issue were clear and detailed. Accordingly, for reasons expressed in numerous District of Columbia Circuit cases, the court holds that the documents fall within the exemption statutes and are therefore covered by FOIA Exemption 3. *See Afshar,* 702 F.2d at 1129–1138; *Gardels,* 689 F.2d at 1103–07; *Halperin,* 629 F.2d at 146–150; *Goland,* 607 F.2d at 348–55; *Baker v. CIA,* 580 F.2d 664, 667–670 (D.C.Cir.1978).

D. *Conclusion*

For the reasons stated herein, after careful consideration of the agency's affidavits and after a thorough *in camera* inspection, there being no evidence of agency bad faith and the court having concluded that the agency's affidavits were detailed, clear, and specific, the court holds that the entire operational file on United States involvement in the 1954 coup in Guatemala is properly withheld under *either* FOIA Exemption 1 or FOIA Exemption 3. Therefore, the court grants defendant's motion for summary judgment.

An appropriate Judgment and Order accompanies this Memorandum.

JUDGMENT AND ORDER

This matter came before the court on defendant's motion for summary judgment and on several related discovery motions. After careful consideration of these motions, the oppositions thereto, the agency's public and classified affidavits and a complete *in camera* review, and the entire record in this matter, it is, by the court, for the reasons stated in the accompanying Memorandum, this 5th day of March, 1984,

ORDERED that defendant's motion to strike the declaration of Thomas M. Susman is denied; and it is further

ORDERED that plaintiff's motion to compel defendant to respond to certain interrogatories is denied; and it is further

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment is granted and this case is dismissed with prejudice.