**FLORIDA IMMIGRANT ADVOCACY CENTER, Plaintiff,**

**v.**

**NATIONAL SECURITY AGENCY, Defendant.**

No. 04–21345–CIV.

United States District Court, S.D. Florida.

June 22, 2005.

Cheryl Little, Esq., Mary Gundrum, Esq., Florida Immigrant Advocacy Center, Miami, FL, Carl Goldfarb, Ft. Lauderdale, FL, for Plaintiffs.

Carole Fernandez, Assistant United States Attorney, Miami, FL, for Defendants.

## *OMNIBUS ORDER*

GOLD, District Judge.

### I. *Introduction and Background*

THIS CAUSE is before the Court upon the Defendant's Motion for Summary Judgment [D.E. 13], the Defendant's Motion for Protective Order from Discovery [D.E. 18], the Plaintiff's Motion Pursuant to Rule 56(f) [D.E. 19], and the Plaintiff's Motion for Partial Summary Judgment [D.E. 46]. The essential controversy concerns the Plaintiff's request to the National Security Agency under the Freedom of Information Act for any and all information regarding the use of Haiti as a staging ground for the migration of third country nationals to the United States. Upon a search of documents pursuant to the request, the NSA located a one-page NSA-originated document which it claimed was exempted from Freedom of Information Act because it was classified as "Top Secret."

By order of the Court, dated February 7, 2005, I required the NSA to respond to the Plaintiff's request for discovery under

seal for review *in camera* by the Court. Upon reviewing the discovery, I set oral argument on the pending motions for Friday, May 27, 2005, and further ordered the Defendant to produce the one-page document at issue for my review *in camera.* Upon reviewing the document *in camera,* and hearing oral argument, I conclude that Defendant's motion for summary judgment should be GRANTED, Defendant's motion for a protective order from discovery should be GRANTED, the Plaintiff's motion pursuant to Fed.R.Civ.P. 56(f) should be DENIED, and the Plaintiff's motion for partial summary judgment should be DENIED.

In this Order, I address only the issues presented to me in this litigation. I emphasize that this litigation **does not** concern the validity of the Government's policy towards Haitian immigration, or the merit, or factual validity, of the former Attorney General's position that Haiti is a staging point for attempted immigration to the United States of "third country nationals." As conceded at oral argument,[1] if either Exemption 1 or 3 of the FOIA applies, there is an absolute bar to the Plaintiff's request without resort to the balancing of Plaintiff's need for the information verses the extent of the national security interests involved.

## II. *Undisputed Facts*

On May 21, 2003, Plaintiff sent Defendant a request for records under the Freedom of Information Act. [Exhibit 1 to Plaintiff's complaint; Giles Affidavit, ¶¶ 2, 8]. The request sought:

> ... any and all information regarding the use of Haiti as a staging ground for the migration of third country nationals to the United States. Specifically, we

seek all such information that provided the basis for U.S. Attorney General John Ashcroft to state in the *In Re D-J* (23 I. & N. Dec. 572 [2003 WL 1953603], April 17, 2003): "Thus, the State Department declaration asserts that it has 'noticed an increase in third country nations (Pakistanis, Palestinians, etc.) using Haiti as a staging point for attempted migration to the United States ...."

INS Brief, Exh. B, par. 11.

Following receipt of the request, the NSA conducted a database search for records potentially responsive and identified several documents. [Giles Affidavit, ¶ 9]. The documents identified which belonged to other agencies were referred to those agencies for response to the requestor. [Giles Affidavit, ¶ 9]. Indeed, Plaintiffs acknowledge that it submitted an identical FOIA request to the United States Department of State, also on May 21, 2003. [Goldfarb Affidavit, ¶ 15]. In response, the State Department released a number of documents. [Goldfarb Affidavit, ¶ 15 and Plaintiff's Composite Ex. 9].

On August 25, 2003, the NSA responded, stating that "One (1) NSA-originated document (1 page), responsive to your request" is currently and properly classified as "TOP SECRET" under Executive Order 12958, as amended, Sec. 1.4(c)(g). As such, it is exempt from disclosure as a national security document. Additionally, the NSA contended that the document is exempt from disclosure under another exception in FOIA, Sec. 3, which allows withholding of information specifically protected by statute. [Exhibit 2 to Plaintiff's complaint; Giles Affidavit ¶¶ 2, 8].

---

1. *See* Transcript of Oral Argument at 2:06:11–2:06–32:

THE COURT: But what I am saying is this is not a weighing process, a balancing the

merit of your position versus the security interests under the exception. If the exemption applies, it's a bar, end of story. MR. GOLDFARB: Yes, Your Honor.

By letter dated October 24, 2003, Plaintiff administratively appealed the NSA's withholding of the one–page document, and, on March 1, 2004, the NSA issued a decision affirming that the document should be withheld. [Exhibits 3 and 4 to Plaintiff's complaint; Giles Affidavit ¶¶ 2, 8].

In filing the subject complaint, the Plaintiff specifically requested, in its prayer for relief, the following: that this Court conclude that there is no legal basis for the denial of the Plaintiff's request; that, to the extent national security exemptions are claimed, the Court should examine the contents of the document *in camera* to "determine whether the government has met its burden that such records or any part of them shall be withheld under the exemptions set forth in FOIA"; and that the Court issue an injunction compelling "defendants to produce immediately and in its entirety the one page document identified by N.S.A. as responsive to FIAC's request." [D.E. 1, pages 6–7].

The document withheld by NSA is a one-page report generated in connection with NSA's signals intelligence ("SIGINT") mission. [Giles Affidavit, ¶¶ 4–7]. The primary purpose of NSA's SIGINT mission is to obtain information necessary to national defense, national security, or the conduct of foreign affairs of the United States by intercepting communications of foreign governments. [Giles Affidavit, ¶¶ 5–6]. NSA's effectiveness in intercepting foreign communications depends upon maintaining the strict secrecy regarding matters related to the process, such as the identity of specific communications, or "targets," and successfulness of intercept operations. [Giles Affidavit, ¶ 7].

SIGINT information is exceptionally sensitive and vulnerable and is subject to even more safeguards and access requirements than those normally required for information of the same classification level. [Giles Affidavit, ¶ 4]. Giles, who is NSA's Director of Policy, and who has a TOP SECRET classification authority, reviewed the one-page SIGINT report and determined that it is properly classified TOP SECRET pursuant to the standards set forth in Executive Order 12958. [Giles Affidavit, ¶¶ 1, 2, 11, 13]. Further, he determined that no portion of the document can be reasonably segregated and disclosed without revealing the sources and methods used by the NSA to obtain the information and potentially revealing the specific communication source involved. [Giles Affidavit, ¶¶ 2–4].

By order dated February 7, 2005, I required that the NSA fully answer Plaintiff's requested discovery under seal. I required that the discovery response distinguish between purported classified information and non-classified information, or explain why such a distinction cannot be made under the circumstances, particularly as it relates to the search conducted, and to show cause why the non-classified information is not discoverable. [D.E. 29]. Following receipt and review of the sealed responses, I issued a further order requiring that the one-page document be provided to the Court for review *in camera* prior to oral argument. [D.E. 36]. This Order granted one aspect of Plaintiff's relief, that is, the request for *in camera* inspection.

On May 26, 2005, I reviewed the one-page document *in camera* and returned it to the appropriate official. At oral argument, I announced orally the denial of Plaintiff's request for discovery and the granting of Defendant's motion for protective order. *See* Transcript of Oral Argument at 2:13:02–2:13:27. I further required that Plaintiff file a response to Defendant's motion for summary judg-

ment.[2] *Id.*

Following Oral Argument, Plaintiff filed a response to Defendant's motion for summary judgment [D.E. 51] on June 6, 2005.[3] Defendant filed a reply to Plaintiff's response [D.E. 53] on June 13, 2005.

### III. *Standard of Review*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512; *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir.2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir.2001).

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-movant. *Denney*, 247 F.3d at 1181. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

▆ In a suit brought to compel production pursuant to FOIA, where there are cross-motions for summary judgment, an agency is entitled to summary judgment "if no material facts are in dispute and if it demonstrates 'that each document that

---

**2.** Plaintiff filed a cross-motion for partial summary judgment [DE 46] on May 10, 2005. Defendant filed its response to Plaintiff's motion [DE 48] on May 25, 2005. Plaintiff filed its reply brief [DE 52] on June 6, 2005.

**3.** In its response, Plaintiff only cited two disputes of material fact. First, Plaintiff argued that the NSA's database search was overly broad and incomplete. Plaintiff did not submit affidavits or other record evidence in support of this contention and in contradiction of the Giles Affidavit. Accordingly, I conclude that under the Federal Rules of Civil Procedure governing summary judgment, Plaintiff has not demonstrated the existence of a dispute of material fact. Second, Plaintiff contends that the NSA has not submitted record evidence in support of the notion that the withheld document was, in fact, generated in connection with NSA's SIGINT mission. Upon a review of the Giles Affidavit, however, I conclude that the NSA has provided support regarding the origins of the withheld document. [Giles Affidavit, ¶¶ 1, 2, 11, 13]. Plaintiff did not submit affidavits or other record evidence to contradict the Giles Affidavit. Accordingly, I conclude that the NSA has not demonstrated a dispute of material fact. I conclude that the Giles Affidavit is sufficient on its face and need not be subject to further inquiry.

falls within the class requested either has been produced ... or is wholly exempt from the Act's inspection requirements." ' *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C.Cir.2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978)); *see also Billington v. United States Dep't of Justice*, 233 F.3d 581, 583–84 (D.C.Cir.2000); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C.Cir.1998). Moreover, in national security cases, such as this one, "Congress has instructed the courts to accord 'substantial weight' to agency affidavits." *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir. 1978). On the other hand, summary judgment is appropriate for a FOIA plaintiff when the requested material, "even on the agency's version of the facts, falls outside the proffered exemption." *Petroleum Inf. Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1433 (D.C.Cir.1992).

## IV. *Analysis*

### A. *The Freedom of Information Act*

Plaintiffs seek release of a one page document pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, which the NSA has identified as responsive to plaintiff's FOIA request, but also has identified as "TOP SECRET." Plaintiff's Complaint, page 1 [D.E. # 1]. FOIA requires federal agencies to comply with requests to make records available to the public, unless the requested records fall within one or more of nine categories of exempt material. 5 U.S.C. § 552(a), (b). If a document contains exempt information, the agency is obligated to release "any reasonably segregable portion" after

deletion of the nondisclosable portions. 5 U.S.C. § 552(b).

■■■■ The district court reviews *de novo* the agency's determination that it has fulfilled its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B); *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994); *Hayden v. Nat'l Security Agency*, 608 F.2d 1381, 1384 (D.C.Cir. 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). The burden is on the agency to demonstrate that it has acted properly in withholding information. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150–51, 109 S.Ct. 2841, 106 L.Ed.2d 112; *Hayden*, 608 F.2d at 1384. Exemptions must be narrowly interpreted to give effect to the strong Congressional intent of favoring disclosure. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151–52, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989); H.R.Rep. No. 1497, 89th Cong., 2d Sess., 6 (1966), U.S.Code Cong. & Admin.News 1966, pp. 2418, 2423 (noting the need "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy"). However, in a case concerning questions of national security, such as this one, the D.C. Circuit has instructed district courts to give "substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Salisbury v. United States*, 690 F.2d 966, 970 (D.C.Cir. 1982); *see also Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C.Cir.1982) (requiring "utmost deference" to affidavits by military intelligence officers).[4]

---

4. The Eleventh Circuit has reviewed these general principles with regard to a claim for Exemption 5 from the FOIA. It stated in *Moye, O'Brien, O'Rourke, Hogan & Pickert v. National Rail Road Passenger Corp*, 376 F.3d 1270 (11th Cir.2004):

FOIA requires government agencies to disclose to the public any requested documents. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 793–94, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984); 5 U.S.C. § 552(a), (b). An agency may avoid disclo-

The D.C. Circuit has held that FOIA requires that an agency claiming that material is exempt from exposure provide the requestor with a description of each document withheld and an explanation of the agency's reasons for nondisclosure. *See Oglesby v. United States Dep't of the Army,* 79 F.3d 1172, (D.C.Cir.1996); *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973). The agency must provide affidavits that "disclos[e] as much information as possible without thwarting the exemption's purpose." *King v. United States Dep't of Justice,* 830 F.2d 210, 224 (D.C.Cir.1987). Summary judgment for the federal agency is proper "[i]f the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith." *Hayden,* 608 F.2d at 1384 ("When the itemization and justification are themselves sensitive, however, to place them on public record could damage security in precisely the way the FOIA Exemption 1 is intended to prevent.").

 In this case, I have ordered an *in camera* inspection of the one-page document after previously ordering the NSA to provide responses to the Plaintiff's discovery requests under seal. I desired to review the NSA's discovery responses in conjunction with the one-page document.

The ultimate criterion is simply whether the district judge believes that *in camera* inspection is needed to make a reasonable *de novo* determination on the claims of exemption. *Ray v. Turner,* 587 F.2d 1187, 1195 (D.C.Cir.1978). I did so because I desired to satisfy an "uneasiness" or "doubt" that the exemption claim may be overbroad given the nature of the Plaintiff's arguments. *See id.* at 1195. Having completed the *in camera* inspection, I am satisfied that the issues presented may be resolved by summary judgment without the need for further discovery.

### 1. *FOIA Exemption 1*

 Defendant NSA claims that it properly withheld the one-page SIGINT report pursuant to FOIA Exemption 1. The Eleventh Circuit has not rendered an opinion regarding Exemption 1 with regard to national security issues. Significant opinions have been decided by the District of Columbia Circuit and are discussed below.[5]

Exemption (b)(1) of FOIA exempts from mandatory disclosure records that are:

(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and

(B) are in fact properly classified pursuant to such Executive Order.

---

sure only if it proves that the documents fall within one of nine statutory exemptions. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Office of the Capital Collateral Counsel,* 331 F.3d at 802. Because FOIA's purpose is to encourage disclosure, its exemptions are to be narrowly construed. *Cochran v. United States,* 770 F.2d 949, 954 (11th Cir.1985) (citing *Department of Air Force v. Rose,* 425 U.S. 352, 366, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). The government bears the burden of proving that a requested document is exempted. *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 35

L.Ed.2d 119 (1973); *Chilivis v. SEC,* 673 F.2d 1205, 1210–11 (11th Cir.1982); 5 U.S.C. § 552(a)(4)(B).
*Moye,* 376 F.3d at 1276–1277.

**5.** The Eleventh Circuit has not decided cases under the FOIA under Exemption 3 as it pertains to national security matters. I conclude that the Eleventh Circuit would apply the District of Columbia Circuit's decisions as to both Exemptions 1 and 3 on national security matters because its decisions are persuasive and well-reasoned.

5 U.S.C. § 552(b)(1). Thus, the NSA has the burden of demonstrating (1) that it has followed proper classification procedures and (2) that the document "logically falls within the claimed exemption." *Hayden,* 608 F.2d at 1387. The NSA relies on Executive Order No. 12958, reprinted in 60 Fed.Reg. 19825 (1995), as amended March 25, 2003, in withholding the one-page document pursuant to FOIA exemption (b)(1). *See* Def.'s Mot. for Sum. Judg. at 6. Executive Order 12958 sets forth the standards regarding national security classification, and, at section 1.4, the specific categories of information which may be considered for classification. *See* Giles Affidavit, ¶¶ 11–12. These categories include information that pertains to intelligence activities, intelligence sources and methods, cryptology, or the vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to national security. The NSA has classified the one-page document as "TOP SECRET" pursuant to the standards in Executive Order 12958, as amended. Giles Affidavit, ¶ 2.

The NSA explained that it withheld the one-page document because:

> In addition to containing classified information, the document requested contains Sensitive Compartmented Information (SCI) for which the Director of Central Intelligence (DCI) imposes additional safeguards and access requirements. Because of the exceptional sensitivity and vulnerability of the information, these safeguards and access requirements exceed the access standards that are normally required for information of the same classification level. This document contains signals intelligence (SIGINT), which is a subcategory of SCI. The protection of SIGINT reports in their entirety is at the heart of Public Law 86–36. The law protects NSA's function and activities, and no activity is more essential to NSA's mission than SIGINT reporting. Moreover, while it may be possible at times to segregate the information in certain instances, I have determined that it is not possible to segregate the information in this document without revealing the sources and methods used by the NSA to obtain this information. Disclosure of any portion of this document could potentially reveal the specific communication source involved.

Giles Affidavit, § 4.

The information provided by the Giles Affidavit and the accompanying sealed responses to Plaintiff's discovery confirm that the information at issue identifies the targets whose communications have been exploited. To disclose any of this information would inform those targets of their vulnerabilities and of NSA's specific capabilities, sources and methods. If those targets learned or suspected that their communications were being successfully exploited, they would quickly act to engage countermeasures to deny access to those communications by changing their methods.

I therefore conclude that the government's proffered justification for non-disclosure "is sufficiently specific, in light of the substantial weight owned to agency explanations in the context of national security, to qualify for withholding under Exemptions 1 and 3." *Students Against Genocide v. Department of State,* 257 F.3d 828, 840 (D.C.Cir.2001). I conclude that the NSA has sufficiently met the requirements of Exemption 1(b) by demonstrating, through its affidavit and sealed responses to discovery, that the one-page document is exempted by virtue of being specifically authorized under criteria established by an Executive Order to be kept

secret in the interest of national defense or foreign policy and is in fact properly classified pursuant to such Executive Order. 5 U.S.C. § 552(b)(1)(1976). I further conclude that there are reasonable grounds cited for expecting the requisite potential harm from disclosure. While I conclude that the NSA has met this burden through its affidavits and sealed responses to discovery, I further base this conclusion on my own *in camera* review of the document.

I do not find that the Giles Affidavit, as supplemented by the sworn answers to discovery, is deficient in any way; the Affidavit provides sufficient information showing, with reasonable specificity, why the documents fall within the exemption. It is not merely conclusory, does not merely recite statutory standards, nor is it too vague or sweeping. The Plaintiff does not take issue that the document is classified as "TOP SECRET," or that such classification was made in bad faith. Unless the affidavit is deficient in one or more of the above ways, "the court need inquire no further into [its] veracity." *Hayden,* 608 F.2d at 1387. As noted in *Hayden,* "this is in accordance with congressional intent that courts give agency affidavits 'substantial weight,' in recognition of the agency's expertise." *Id.*

### 2. *FOIA Exemption 3*

■ As an alternative ground, I conclude that FOIA Exemption 3 applies. 5 U.S.C. § 552(b)(3) (1976). That provision of the FOIA exempts from disclosure those matters which are specifically exempted from disclosure by statute, provided that such statute: (a) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (b) establishes particular criteria for withholding or refers to particular types of matters to be withheld. Based on

the District of Columbia Circuit's decision in *Hayden,* 608 F.2d at 1389, as reaffirmed in *Linder v. National Security Agency,* 94 F.3d 693 (D.C.Cir.1996), I conclude that Public Law No. 86-36 is such an exempting statute. Section 6(a) of that law states: "Except as provided in subsection (b) of this section, nothing in this Act or any other law (including, but not limited to, the ... [Classification Act of 1949]) shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency." Pub.L. No. 86-36, 73 Stat. 63 (1959) (codified at 50 U.S.C. § 402 (1976)). The Classification Act of 1949, 5 U.S.C. § 654 (1958), was repealed by Pub.L. No. 86-626, 74 Stat. 472 (1960). Other exempting statutes include 50 U.S.C. § 403(d)(3) and 18 U.S.C. § 798; however, Pub.L. No. 86-36 grants the broadest exemption of the three statutes. *Id.*

The Giles Affidavit, even without the sealed discovery, demonstrates that release of the one page document would disclose a function of the NSA, "since signals intelligence is one of the Agency's primary functions; and would disclose information with respect to Agency activities, since any information about an intercepted communication concerns an NSA activity." *Hayden,* 608 F.2d at 1381. As further noted in *Hayden,* "Certainly where the function or activity is authorized by statute and not otherwise unlawful, NSA materials integrally related to that function or activity fall within Public Law No. 86-36 and Exemption 3." *Id.*

The *Hayden* court recognized that the factual showing required for NSA to satisfy Exemption 3 is by nature less than for Exemption 1. *Id.* at 1390. Here, in its Affidavit, the Agency has shown specifical-

ly and clearly that the requested materials fall into the category of the exemption in that the one-page document concerned a specific NSA activity, to wit: intelligence reporting based on electromagnetic signals. As in *Hayden*, NSA has satisfactorily explained in its affidavit and sealed discovery responses why disclosure of requested materials could reveal the nature of that activity. As stated in *Hayden*, "Further detail about specific documents would not be relevant to this exemption: Exemption 3 differs from Exemption 1 in that ' its applicability depends less on the detailed factual contents of specific documents . . . ." *Id.* I conclude, as in *Hayden*, that: "[T]he Agency stated as much detail publicly in this case as it reasonably could without revealing sensitive information . . . . This is the proper way to satisfy FOIA Exemption 3." *Id.*

In summary, it is not a matter of balancing the Plaintiff's need for the requested information against the Government's need for secrecy and its desire to avoid an undue burden. *See Linder v. National Security Agency*, 94 F.3d at 698. The protection afforded by section 6 is absolute. *Id.* "If a document is covered by section 6, NSA is entitled to withhold it regardless of the requesting party's needs." *Id.*

## B. Segregability of Requested Document

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The Giles Affidavit states that no part of the document is reasonably segregable. Giles Affidavit, ¶ 2. Upon review of the document *in camera*, I concur that no part of this one-page document can reasonably be separated. The Agency's rationale for nondisclosure (of agency activities, methods, sources) applies to the entire content of the withheld document. Accordingly, upon consideration of the Giles Affidavit and, independently, upon my own in camera review of the withheld document, I conclude that no portion of the record is reasonably segregable from those portions excluded under Exemptions 1 and 3.

## C. Plaintiff's Requested Discovery and Entry of Protective Order for NSA

▮ Upon reviewing the one-page document and the Agency's sealed answers to Plaintiff's proposed discovery,[6] I conclude,

---

**6.** As indicated in the NSA's response to Plaintiff's motion pursuant to Rule 56(f), the responses to plaintiff's interrogatories and requests for admission filed under seal at this Court's direction contain classified information and unclassified information which are protected from disclosure by statute and executive order. "Classified Information" means information classified pursuant to Executive Order 12958. "Unclassified but Protected Information" is information that is not classified as stated above but that pertains to: (a) the organization or any function of the National Security, or any information with respect to the activities thereof, or the names, titles, salaries, or number of persons employed by the agency, *see* § 6 of the National Security Act of 1959, as amended, Pub.L. 86–36, 50 U.S.C. § 402, and (b) intelligence

sources and methods. 50 U.S.C. § 403–3(c)(6).

Although Plaintiff asserts that its discovery is "narrowly tailored," an assertion with which I disagree, it has failed to show that there are circumstances which warrant any discovery in this FOIA action. The Giles Affidavit, together with this Court's *in camera* review of the discovery responses, provide an "ample factual base" upon which I can conclude that the agency has properly responded to Plaintiff's FOIA request. *See Miscavige v. I.R.S.*, 2 F.3d 366, 368–69 (11th Cir. 1993)("The plaintiff's early attempt in litigation of this kind to obtain a Vaughn Index and to take discovery depositions is inappropriate until the government has first had a chance to provide the court with the information neces-

**1342**

with respect to NSA's signals intelligence operations, that "[h]arm could follow from the disclosure [through discovery] of any material that might help to identify the communications intercepted by NSA, **such as information about date, time, origin, or manner of transmission or receipt.**" *Hayden,* 608 F.2d at 1385 (emphasis added); *see also Linder,* 94 F.3d at 698. In this case, information about the specific date, time, origin, or manner or transmission or receipt on which the document was generated could, when combined with other unclassified information, alert the targets of the intercepted communication by informing them of classified information, including which communication channels are vulnerable to NSA collection efforts. With the additional information, an intercepted entity would reasonably be likely to alter their communication methods, adopt encryption or provide disinformation,

knowing that the United States Government is intercepting their communications. I further conclude from reading the document *in camera* that the information related to the timing of the intercept is particularly sensitive.

Moreover, as the document evidences an intercepted communication, Plaintiff's discovery effort to have NSA specifically identify which country was involved, could, when combined with other publically available information, advise targets regarding vulnerabilities.[7] The disclosure of such matters, as required by the search terms requested by Plaintiff, would provide information regarding the ability of the NSA to retrieve reports and is therefore protected from release by Public Law 86–36, 50 U.S.C. § 402, among other relevant statutes and executive orders.[8]

Finally, the thrust of Plaintiff's discovery is aimed at determining the content of

---

sary to make a decision on the applicable exemptions."). Because I find that Exemptions 1 and 3 apply, no discovery is warranted.

7. Plaintiff is improperly attempting to "piece together" information regarding the type of collection used for the withheld document. A review of the requested discovery is particularly illustrative. Plaintiff has requested the date when the document originated (interrogatories 1, 2) *and information about the source of the document that NSA has determined to be currently and properly classified.* For example, Plaintiff asks if the document contains "communications intelligence" ('COMINT') (interrogatory 10), information derived from "foreign electromagnetic signals" (interrogatory 12), "communications of a foreign government(s)" (interrogatory 13), or "intercepted foreign communications" (interrogatory 14), and whether the document specifically identifies a "target" (interrogatory 15). Under what is known as the "mosaic theory," when unclassified information is released and combined with other publicly available information, adversaries can "piece together" information to create a picture of mosaic that, *because of the level or detail or granularity, is*

classified. The mosaic theory is recognized in Executive Order 13292, which amended Executive Order 12958. The relevant section states: "Compilations of items of information that are individually unclassified may be classified if the compiled information reveals an additional association or relationship that: (1) meets the standards for classification under this order; and (2) is not otherwise revealed in the individual items of information. As used in this order, 'compilation' means an aggregation of pre-existing unclassified items of information."

8. Plaintiff asserts that the Giles Affidavit is inadequate because it fails to identify search terms, fails to define certain terms such as "SIGINT," and fails to explain why no part of the withheld document is reasonably segregable. I disagree. The Giles Affidavit does contain an explanation of the term "SIGINT" at pages 4–5, and satisfactorily explains why it is not possible without revealing the sources and methods used, to segregate information in the one-page SIGINT report [¶ 4]. Upon my own review *in camera,* I also conclude that disclosure of any portion of the report could reveal the specific communications source involved.

the document, which is clearly inappropriate in light of Exemption 1 of the FOIA. Plaintiff is attempting to obtain through discovery information which would not be available to it under the FOIA and may be classified or otherwise protected by disclosure by statute, including information regarding the origin and content of the withheld document and information related to the NSA's signals intelligence (SIGINT) mission. Under such circumstances, where discovery is aimed at obtaining the documents or information at issue, it is not allowed. *Pollard v. FBI*, 705 F.2d 1151, 1154 (9th Cir.1983) (denying plaintiff's request to take discovery concerning the contents of the withheld documents because that was "precisely what defendants maintain is exempt from disclosure to plaintiff pursuant to the FOIA") (citing *Military Audit Project v. Casey*, 656 F.2d 724, 750–51 (D.C.Cir.1981); *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)); *Local 3, Int'l Bhd. Of Elec. Workers v. NLRB*, 845 F.2d 1177, 1179 (2d. Cir.1988) ("Discovery here would essentially grant Local 3 the substantive relief it requests: disclosure of documents that the NLRB claims are exempt. Thus, Local 3 is not entitled to discovery of documents claimed to be exempt.").

Discovery is likewise not permitted where the plaintiff, as in this case, has failed to make a bad faith showing on the part of the agency sufficient to impugn the agency's affidavits or declarations or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate. *Carney v. U.S. Dept. Of Justice*, 19 F.3d 807 (2d Cir.1994). As the Second Circuit stated in *Carney:* "Affidavits submitted by an agency are 'accorded a presumption of good faith,' *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200

(D.C.Cir.1991); accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face. When this is the case, the district court may 'forgo discovery and award summary judgment on the basis of affidavits.' " *Id.* at 812. After reviewing the NSA's response to discovery under seal, I am satisfied that the Giles Affidavit is sufficiently detailed, nonconclusory and submitted in good faith that discovery is not warranted. Plaintiff has failed to satisfactorily demonstrate that there are any factual disputes or questions impugning the agency's good faith which would warrant discovery. *See SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200–02 (D.C.Cir.1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.") (internal quotations and citation omitted); *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d. Cir.1999) (citing *Carney*, 19 F.3d at 813) (holding that discovery as to the agency's search and exemptions it claims is generally unnecessary if the agency's submissions are adequate on their face); *Heily v. U.S. Dept. Of Commerce*, 69 Fed.Appx. 171, 174 (4th Cir.2003) ("It is well established that discovery may be greatly restricted in FOIA cases."); *Wheeler v. C.I.A.*, 271 F.Supp.2d 132, 139 (D.D.C.2003) ("Discovery is generally unavailable in FOIA cases").

### D. *Plaintiff's Motion for Partial Summary Judgment*

Plaintiff's Motion for Partial Summary Judgment argues that the search that the NSA conducted in response to Plaintiff's FOIA request was patently overbroad and unreasonable. As I have previously ex-

plained in this Order, I disagree with Plaintiff's assessment.

It is the agency's burden to show "beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Edmonds v. FBI*, 272 F.Supp.2d 35 (D.D.C.2003) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983)). "For purposes of this showing, the agency 'may rely upon affidavits …, as long as they are relatively detailed and nonconclusory and submitted in good faith.' The required level of detail 'set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* (quoting *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C.Cir.1990)). "The fundamental issue is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" *Id.* (quoting *Weisberg*, 745 F.2d at 1485).

Plaintiff argues that the search conducted by the NSA was not sufficiently narrowly tailored. Plaintiff's request stated:

This letter is to respectfully request from the appropriate office any and all information regarding the use of Haiti as a staging ground for the migration of third country nationals to the United States. Specifically, we seek all such information that provided the basis for U.S. Attorney General John Ashcroft to state in *In re D–J* (23 I & N Dec. 572[ 2003 WL 1953603], April 17, 2003): "Thus, the State Department's declaration asserts that it has 'noticed an increase in third country nations (Pakistanis, Palestinians, etc.) using Haiti as a staging point for attempted migration to the United States. This increases the national security interest in curbing use

of this migration route.' INS Brief, Exh. B, 11."

Complaint, Ex. 1.

The NSA, in response to Plaintiff's request, searched for documents "regarding the use of Haiti as a staging ground for the migration of third country nationals to the United States." See Plaintiff's Motion for Partial S.J. at 2. Plaintiff argues that the NSA's search was inadequate because the NSA did not specifically search for documents regarding Pakistani and Palestinian nationals, but rather searched for any and all documents regarding third country nationals using Haiti as a staging point for migration to the United States. Essentially, Plaintiff complains that the NSA searched the "etc." in former Attorney General Ashcroft's reference to "Pakistanis, Palestinians, etc."

The fault that Plaintiff finds with the NSA search is baseless. The Giles Affidavit reveals that the search conducted by the NSA was directly responsive to the Plaintiff's request. The Plaintiff did not limit its request to a search regarding one or two specific nationalities, but rather requested that the NSA search for records pertaining to the migration of third party nationals described as "Pakistanis, Palestinians, **etc.**" Complaint, Ex. 1 (emphasis added). The two groups—Pakistanis and Palestinians—are a subset of the third category referenced by the Attorney General; that is, the "etc." The search conducted by the NSA did not limit itself to the first two groups because the Plaintiff's request was broader than that.

Notably, Plaintiff cannot offer an alternative search which would incorporate Plaintiff's request that the NSA search the third, broad "etc." category referenced by the Attorney General. Plaintiff seems to be suggesting that the NSA should have ignored this aspect of Plaintiff's request and searched specifically for documents

 

concerning the first two categories. If that is the case, Plaintiff's criticism of the NSA search contradicts the agency's obligation "to construe a FOIA request liberally." *LaCedra v. Executive Office for U.S. Attorneys,* 317 F.3d 345, 348 (D.C.Cir. 2003). If, in the alternative, Plaintiff is suggesting that the NSA should have guessed as to which countries were to be searched under the third "etc." category, such a suggestion is unreasonable and goes well beyond the agency's obligation to construe a FOIA request liberally. I conclude that it was eminently reasonable for the NSA to search more broadly for documents "regarding the use of Haiti as a staging ground for the migration of third country nationals to the United States" *precisely because* the Plaintiff requested such a broad search. Accordingly, I conclude that the Defendant has met its burden to show "beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg,* 705 F.2d at 1351.

## V. Conclusion

For the reasons described in this Order, it is hereby **ORDERED AND ADJUDGED** that:

1. The Defendant's Motion for Summary Judgment [D.E. 13] is GRANTED.

2. The Defendant's Motion for Protective Order from Discovery [D.E. 18] is GRANTED.

3. The Plaintiff's Motion Pursuant to Rule 56(f) [D.E. 19] is DENIED, except that Plaintiff's request for *in camera* review of the document is GRANTED.

4. The Plaintiff's Motion for Partial Summary Judgment [D.E. 46] is DENIED.

5. All other pending motions are DENIED AS MOOT.

6. This case is CLOSED.